NANCY J. ALSPAUGH, Guard'n v. L. H. JONES, and others.

Whether one who has assumed to act as Attorney for another, was authorized to do so, is, under proper instructions from the Court, *a question of fact* for the jury.

Where a party filled up a writ for himself in his character as guardian, as plaintiff, and handed it to an officer to be served, but, before it was executed, procured another person to be substituted in his place as guardian, and endorsed the note in question to him :

*Held*, that an Attorney, who usually had *taken judgments* for the former guardian, and for that reason, after the writ had been executed, and before it had been returned (July 1862,) *instructed the Sheriff to receive Confederate and other currency in payment of the amount specified upon its face*, was not authorized so to do.

DEBT, tried before *Mitchell, J.*, at Fall Term 1869, of ALEXANDER Court.

The plaintiff declared upon a note payable by the defendants, originally to one Carson, and by him endorsed to one Marshall, and by the latter to the plaintiff—all as guardians of the minor heirs of one Emily Alspaugh, deceased, being for $226.90.

The defendants relied upon the plea of *payment*, and in support of it showed the following facts :

Previously to the first Monday of March 1862, Carson was guardian of the minor heirs aforesaid, and on the 15th of February 1862, he filled up and handed to the Sheriff a writ for the same cause of action as that in the present suit, returnable to Fall Term 1862, of Alexander Superior Court.

On the 19th of July, the said officer executed said writ. Immediately, one of the defendants insisted on paying the principal, interest and cost, as demanded by the writ, in currency, a considerable amount of which consisted of N. C. Bank notes ; but a greater amount was in Confederate currency. The officer doubted his authority to receive payment. Thereupon they called on an Attorney residing in Taylorsville, for his opinion whether the officer had authority to collect, and give a discharge for money demanded by the

writ; he instructed them that he had the power and authority to do so, and directed the officer to receive it, which he did in such currency as above mentioned, and the only evidence as to the value of such currency at that time, was that it was received by some, and by others was refused. The Sheriff, after receiving the amount of principal, interest and costs in the said currency, endorsed for his return on writ, as follows : " July .19 1862, satisfied in full," &c. The Attorney in question had usually prosecuted suits brought by Mr. Carson to collect the moneys of his wards. In doing this, the only service required of him was to take judgments. The collections were actually made under the directions of Mr. Carson, and the money received by him. In regard to the writ issued by Carson, February 1862, he at first declined to prosecute it, but afterwards, and before the writ was issued, he undertook to attend to it, as to other suits of like nature. When the payment was made to the officer, the Attorney was present. The initials of his name made by himself, were endorsed on the writ, before the payment was made; but he had no recollection that he had ever before seen the writ. The note was not present, but he forthwith received from the officer, and paid into the Clerk's office, the currency received, and it remained there uncalled for, as far as he knows or believes, for two years, when he withdrew a part of it for his own use, and the remainder suffered the fate of all Confederate currency. The Clerk mentioned to some of the parties interested, that those notes were thus deposited, but does not recollect when, or to whom.

It was further shown in the case, that on the first Monday of March 1862, Mr. Carson procured the appointment of G. Marshall, uncle of his wards, to their guardianship, and at that time he endorsed over and assigned the said note, and all notes of his wards, to said Marshall, and delivered them over to him. He never afterwards had possession of any of them, and had no longer the management of the suit brought on said note, or any right to collect it. Marshall was in-

formed he had issued a writ for its collection, but it did not appear that he, Marshall, knew that any counsel had been retained to prosecute it. At the time of the alleged payment, the said note was in the possession of Marshall, at his residence, a considerable distance from the town of Taylorsville, and there was no proof tending to show when he received notice of the alleged payment.

The counsel for plaintiff requested the Court to instruct the jury, that the evidence did not show that the Attorney was an attorney and agent of the plaintiff, with such authority and power as to ratify by his direction or assent, the collection of the money demanded by the writ.

The Court refused the instructions called for; but instructed the jury, that the collection and receipt of the notes and currency by the officer, under the instructions as set forth in the evidence, was a discharge of the note, and the defendants were entitled to their verdict.

The plaintiff excepted ; Verdict for the defendants ; Rule, &c.; Judgment, and Appeal by the plaintiff.

*W. P. Caldwell,* for the appellant.

*Boyden & Bailey, contra.*

SETTLE, J., Two questions are presented for our consideration.

1. Was the attorney ever empowered to act as attorney in the suit brought by Carson, and if he was, how far did his authority extend ?

It was contended upon the argument that the effect of the initials of the attorney's name being marked on the back of the writ as attorney, amount in law to instructions to him to receive the money demanded by the writ. His Honor seems to have adopted this view, for he instructed the jury " that the collection and receipt of the notes and currency by the officer, under the instruction of the attorney, as set forth in the

·evidence, was a discharge of the note." The case states that " the attorney had usually prosecuted suits, brought by Mr. Carson to collect the moneys of his wards. In doing this, the only service required of him, was to take judgments. The collections were actually made under the directions of Mr. Carson, and the money received by him."

His Honor should have left it to the jury to say, whether or not he was the attorney of the plaintiff. And if he was, it was for them to find how far his authority extended ; whether to sue for demand and receive the money sought to be recovered by the suit, or only to take judgment, leaving the business of collecting to Carson.

2. Conceding that he had been fully empowered by Carson to sue for, demand and receive whatever might be due on the note in question, had that power been revoked ?

On the 15th day of February 1862, Carson, who then held the note as guardian, filled up and handed the writ to the Deputy sheriff. Afterwards, to-wit, on the first Monday in March 1862, he procured the appointment of one Marshall, uncle of his wards, to be their guardian, and at that time endorsed and assigned the said note and all notes of his wards to said Marshall, and delivered them to him. The writ was not executed upon the defendants until the 19th day of July following, and then for the first time the attorney marked the initials of his name upon the writ, and assumed, ·contrary to the scope of the authority theretofore exercised by him in the management of Carson's business, to direct and superintend the collection of this debt, and in doing so, took in payment thereof depreciated currency.

Even the power of Carson (upon which the authority in question is said to rest) to direct and control this debt had ceased, having passed to Marshal, 1months before the receipt by the Deputy Sheriff.

There was therefore no privity between the attorney and Marshall, who then held the note as guardian, and was many

miles away in total ignorance of all that was passing to his prejudice.

Let it be certified that there is error.

PER CURIAM.                                        *Venire de novo.*