MONCURE, P.,
delivered the opinion of the court.
This is a writ of error to a judgment rendered by the circuit court of the city of Richmond on the 2d day of November, 1874, in an_ action of debt brought in said court on a judgment obtained at a supreme court of the state of New York for the city and county of New York.
A copy of the record of the case in which sai'd judgment was obtained is set out in the declaration in said action of debt.
The parties to said case are described in said record as “Henry Huston, plaintiff, against - Bowler (whose given name is unknown to plaintiff), Charles C. Herbert, and Charles Illius, defendants.” The case was commenced early in June, 1869.
In the complaint, which was filed on or about the same day, and was signed by the plaintiff’s attorneys, it was charged that at all the terms thereinafter mentioned - Bowler (whose given name is unknown to plaintiff), Charles C. Herbert, and Charles Illius, the defendants above named, were partners in business in the city of New York, under the firm name of Bowler, Herbert & Co.; that on the 17th day of November, 1864, certain persons, under their firm name of N. T. Carter & Co., *made their draft or bill of exchange in writing, dated on that day and directed to the defendants, under their firm name of Bowler, Herbert & Co., and thereby required the said defendants, three-months after the date thereof, to pay to the order of themselves the sum of $1,624, and the said defendants afterwards, to-wit: on 'the 22d day of November, 1864, for value received, accepted the said draft or bill; that thereafter, and before the maturity of said bill or draft, the plaintiff became. and then was, the lawful owner and holder for a valuable consideration; and *99 that the defendants had not paid the same nor any part thereof, except the sum of $1,000, but were justly indebted to the plaintiff in the sum of $684, with interest thereon from the 30th day of February, 1865. Wherefore the plaintiff demanded judgment against the defendants for the said sum of $624 and interest, besides the costs and disbursements of the suit, &c.
The summons to answer said complaint was returned with an affidavit of service thereof, on the 24th day of June, 1869, on Charles C. Herbert, one of the defendants. It does not appear to have been ever served on either of the other two defendants, or that the defendant, Henry Bowler, the plaintiff in error, ever had any knowledge or information as to the existence of the case until after it had ceased to exist. But it does appear, as will presently be seen, that the defendant, Charles Illius, had knowledge of it soon after it was brought.
An answer was filed to said complaint in July, 1869, and was signed by “Sullivan & Bracken, defendants’ attorneys, 29 Wall street, New York.” It contains sixteen paragraphs, which are numbered accordingly, and states in substance, among other things, that on or about the 5th of October, 1864, a firm doing business as miners and shippers of coal in the city of Philadelphia, under the firm name of Carter & Co., through one Henry Huston, the plaintiff in said case, bargained with the defendants’ *firm of Bowler, Herbert & Co., whereby said Huston, on the part of said Carter & Co., agreed to sell and deliver to said firm of Bowler. Herbert & Co. a certain quantity of good, clean anthracite coal; that defendant's firm were to receive on their barge at Richmond, Pennsylvania, the said coal, and pay for the same by their note at three months; that in pursuance of said contract a certain quantity of coal was shipped by said Carter & Co. on a barge for defendant, and at the same lime a bill and draft for the amount thereof, $1,624, was sent to them; that said bill and draft were forwarded and received and accepted by said defendants’ firm long before the arrival of the coal at Albany, New York, where the defendants were to receive the same, and that said bill was received and draft accepted by the defendants, relying upon the good faith and honesty of said Carter & Co., and believing that they had fulfilled the terms of the contract; that on the arrival of the coal at Albany, and its being unloaded, it was found to be not of the quality contracted for, and totally unfit for use; that defendants’ firm immediately informed said Carter & Co. of this fact, and demanded, as same was bulky and expensive to load and return to Pennsylvania. that they should take the same under their control; that the defendants’ firm not being able to re-ship and return said coal to Carter & Co., and the latter not having taken possession of the same, defendants, in order to save loss, notified them to have the same appraised, and that they would pay for I the same at such appraised value; that said ! Carter & Co. were not willing to do this, I but requested defendants to leave the matter open for future adjustment, to which defendants agreed; that before any adjustment was had, and about May, 1865, and long after the maturity of the draft accepted by defendants, they, at the earnest solicitation of Carter & Co., accepted and paid them a draft for the sum of $1,000, on account, for the adjustment '-That was to be made for the value of the coal; that though defendants’ firm have ever desired, asked for and tried to obtain the adjustment as aforesaid, they have never been able to obtain one, said Carter & Co. ever putting it off from time to time, and eventually neglecting and refusing to make the same; that subsequently said Carter & Co. wrongfully and fraudulently passed the draft accepted by defendants’ firm without consideration, and after its maturity to the plaintiff, for the purpose of harrassing defendants and forcing them to make an unjust settlement or purchase quiet, the said Huston, the plaintiff, having full knowledge of all the facts therein before alleged, and that the amount paid by defendants, to-wit: the sum of $1,000, was more than sufficient to pay for the coal shipped to and forced upon defendants, and that said Carter & Co. and said plaintiff, their agent, were fully aware of this. Wherefore, defendants demanded judgment for dismissal of the complaint, &c.
Annexed to the said answer is an affidavit made by the said Charles Illius on the 17th day of July, 1869, stating that “he is one of the defendants above named, that he is acquainted with all the facts of the case, and that he has read the foregoing answ.er and knows the contents thereof, and that the same is true to his own knowledge, except as to the matters therein stated on information and belief, and as to those matters he believes it to be true.”
A copy of said answer was served on plaintiff’s attorneys, who, it seems, gave “notice of settlement or order” to defendants’ attorneys; but having made default on the same, it was dismissed by order of the court; whereupon the defendants’ attorneys gave notice to the plaintiff’s attorneys on the 30th of July, 1869, that the said answer was reserved.
No further order or other proceeding appears to have been made or taken in the case after the said 30th day of *Jtlly, 1869, until the 28lh ,day of January, 1874, when notice was given by the said plaintiff's attorneys to the said defendants’ attorneys that the bill of costs endorsed in the notice would be presented to the clerk of the county of New York for adjustment, &c., at his office in the city of New York, on Friday, the 30th day of January, 1874, &c.; and on the same day due service of a copy of said bill of costs and notice of taxation of the same was admitted by the said attorneys for defendants.
On the 30th day of January, 1874, John P. Reed, Jr., one of the attorneys of the plaintiff in the case, made oath that on or about the 22d day of January, 1874, Charles Illius, one of the defendants, informed deponent that the full name of the defendant, Bowler,, *100 was Henry Bowler, and on the same 30th day of January, 1874, on motion of the said Reed, Jr., it was ordered that the summons and complaint in the case be amended by inserting the name Henry before the word “Bowler,” in the style of the case, and that the words “whose given name is unknown,” he stricken out. And on the same day the case was tried by the supreme court for the city and county of New York, and a jury, and the defendants not appearing, a verdict was rendered therein for the plaintiff for the sum of $1,014.69, and his costs having been adjusted at $210.73. on the motion of the attorneys for said plaintiff, it was adjudged that the plaintiff recover of said defendants the sum of $1,014.69, found by the jury, with $210.73 costs, together amounting to the sum of $1,225.42.
On the 6th day of April, 1874, a little more than two months after the said judgment was obtained, an action of debt was brought thereon in the circuit court of the dty of Richmond, as before mentioned, the parties to the action being described in the declaration therein as “Henry Huston, plaintiff,” and “Henry Bowler, Charles C. Herbert and Charles Illius, late partners doing business *in the city of New York, under the firm name of Bowler, Herbert & Co., defendants.” The said Henry Bowler, who resided in the city of Richmond, was the only one of the said defendants who was summoned and appeared to the said action, the other two being non-residents of the state of Virginia.
On the 2d day of November, 1874. came the parties by their attorneys, and the defendant, Henry Bowler, pleaded nil debet, and put himself upon the country, and the plaintiff likewise (issues having previously been also joined upon the pleas of nul tiel record and the statute of limitations) and the said defendant then tendered to the court three special pleas in writing, to the filing of which the plaintiff objected, and the court rejected said special pleas and. refused to permit them to be filed (the same special pleas having also been tendered, objected to and rejected as aforesaid at previous term of the said court) ; and neither party demanding a jury, and the evidence being heard, it was considered by the court that the plaintiff recover against the defendant, Henry Bowler, $1,225.42, with interest at the rate of seven per centum per annum on $1,014.69, part thereof, from the 31st day of January, 1874, till paid, and his costs, &c.
To the opinion of the court rejecting the said special pleas, the defendant excepted, and the said pleas are set out in the bill of exceptions. They do not very materially vary from each other, and only one of them need to be set out here. The first is as follows:
“Plea No. 1.
“And for a further plea in this behalf, the said defendant, Henry Bowler, says that though said judgment was in fact obtained by plaintiff against said defendant, Henry Bowler, and two other certain persons, named therein respectively, Charles C. Herbert and Charles Illius, in the supreme court of the state of New York, for the city *and county of New York, said judgment was obtained fraudulently against this defendant, Henry Bowler, individually, insomuch as said defendant was not, at any time, served with process issuing out of said court at the suit of said plaintiff, for the cause of action upon which said judgment was obtained; nor did said defendant, Henry Bowler, ever appear in person in said court to answer the plaintiff in said action, for which feaid judgment was so obtained; nor did said defendant, Henry Bowler, at any time or in any way or manner authorize or empower any person or persons whomsoever to appear as his (said defendant’s) attorney, or attorneys, in said court to answer the plaintiff in said action in which said judgment was so obtained; nor had he, the said defendant, Henry Bowler, at any time before the recovery of said judgment, any notice or knowledge of any process or summons, or of any proceeding in said action, or any means or opportunity of defending himself therein or therefrom; and this he is ready to verify. Wherefore said defendant prays judgment whether the plaintiff, his action aforesaid ought to have and maintain against him, the said Henry Bowler. Henry Bowler.”
An affidavit to the truth of the plea is annexed thereto.
The defendant applied to this court for a writ of error to said judgment, which was accordingly awarded. The main, if not the only error in the said judgment assigned in the petition for a writ of error, is the rejection of the said special pleas, which rejection is complained of for several reasons set forth in the petition.
Whether the said judgment be erroneous or not, is the question which this court has now to decide.
This is an action of debt brought in this state on a judgment of another state, to-wit: New York.
*By the constitution of the United States, Article IV, section 1, it is declared that “full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state. And the congress may, by general laws, prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof.”
The act of congress of May 26th, 1790, Vol. I, p. 115, after providing the mode by which they shall be authenticated, declares that “the said records and judicial proceedings, authenticated as aforesaid, shall have such faith and credit given to them in every court within the United States, as they have, by law or usage, in the courts of the state from whence the said records are or shall be taken.”
For the judicial decisions which have been made in regard to the aforesaid provisions of the constitution and the act of congress, reference may be had to 2 American Reading Cases, with notes by Hare & Wallace, 5th edition, pp. 597-664; the leading cases *101 there reported being Mills v. Duryce, 7 Cranch R. 481-487, and McElmoyle v. Cohen, 13 Peters R. 313-330.
In Mills v. Duryee, it was held that nil debet is not a good plea to an action founded on a judgment of another state; and such has been the uniform doctrine on the subject ever since.
As a necessary consequence, it has also ever since been uniformly held that nul tiel record is a good plea in' such case.
In regard to the construction and effect of the provisions of the constitution of the United States and the act of congress aforesaid, it has been repeatedly held, and is firmly established by decisions of the supreme court of the United States, and of many, if not most of the several states, that the effect thus given in an action in one state upon a judgment obtained in ^another, is based upon the assumption that the court in which the judgment was obtained had jurisdiction of the case when it pronounced such judgment. It is not necessary, of course, that a defendant against whom a judgment is obtained should reside in the state in which the judgment is rendered, in order to give the court rendering the judgment jurisdiction of the case. Tt will have such jurisdiction, though the defendant be a non-resident of the state, if he be summoned therein, or appear in person, or by attorney, to the suit But whether he resided therein or not, he must be so summoned, or appear, in order to give the court jurisdiction of the case, so as to give its judgment the effect in another state provided for by the constitution and act of congress aforesaid. And it is perfectly competent for a defendant in an action in one state, on a judgment rendered in another, to plead and show in his defence that he was not summoned and did not appear in person or by attorney in the suit in such other court; and that, too. even though it be expressly stated in the record of the suit in that court that he was actully summoned or did so appear. The judgment is not conclusive on either of those points, though it may be conclusive on the merits if the court have jurisdiction of the case.
That such has been the course of the decisions on this subject, will appear by reference to the following, among others: Bissell v. Briggs, 9 Mass. R. 463 (1813); Starbuck v. Murray, 5 Wend. R. 148 (1830); Mervin v. Kumbel. 33 Id. 293 (1840); Wilson v. Bank of Mt. Pleasant, 6 Leigh, 2d edition, 570 (1835); Gleason v. Dodd, 1 Metc. R. 333 (1842); Shelton v. Tiffin & al., 6 How. U. S. R. 163 (1848); D’Arcy v. Ketchum & al., 11 Id. 165 (1850); Rape v. Heaton, 9 Wise. R. 328 (1859); Public Works v. Columbia College 17 Wall. U. S. R. 521 (1873); Thompson v. Whitman, 18 Id. 457 (1873). In the last case, as in others, it was held that “the record of a judgment *rendered in another state may be contradicted as to the facts necessary to give the court jurisdiction; and if it be shown that such facts did not exist, the record will be a nullity, notwithstanding it may recite that they did exist.” Knowles v. The Gaslight & Coke Co., 19 Id. 58 (1873). In that case it was held that, “in an action -on a judgment in another state, the defendants, notwithstanding the record shows a return of the sheriff’ that he was personally served with process, may show the contrary, namely, that he was-not served, and that the court never acquired jurisdiction of his person.” And the case of Thompson v. Whitman, supra,decided by the same court in the same year, was affirmed and applied. Hill v. Mendenhall, 21 Id. 453 (1874). In that case it was held by the Chief Justice Waite, delivering the opinion of the wh-ole court, that “since the cases of Thompson v. Whitman, 18 Wall. U. S. R. 457, and Knowles v. Gaslight & Coke Co., 19 Id. 58, it may be considered as settled in this court, that when a judgment rendered in one state is sued upon in another, the defendant may contradict the record to the extent of showing that in point of fact the court rendering the judgment did not have jurisdiction of his person. If such showing is made, the action must fail, because a judgment obtained under such circumstances has no effect -outside of the state in which it was rendered. In Underwood v. McVeigh, 23 Gratt. 409, Judge Christian delivering the unanimous opinion of this court, laid down the principle, among others of a like kind, that “no sentence of any court is entitled to the least respects in any other court or elsewhere when it has been pronounced ex parte and without opportunity of defence.” To the same effect is Windsor v. McVeigh, 3 Otto R. 274. See also the following books on the same subject, viz: 1 Kent’s Com., eleventh edition, p. 261, marg. and notes; 1 Rob. Pr.. 219: a Id. 437; 7 Id. 109; 1 Smith’s Ldg. *Cas., 7th Am. ed. pp. 1118-1146; 2 Id. 828; 2 American Leading Cases, supra.
The summons to answer the complaint in the action of debt in New York appears from the record to have been executed on one-only of the three defendants, to-wit: Charles C. Herbert; though another of them, to-wit: Charles Illius, had notice add joined in the defence of the action, and made oath to the truth of the facts stated in the answer. The third defendant, Henry Bowler, appears never | to have been summoned to answer the complaint, nor to have appeared to defend the action, in person or by attorney, nor to have authorized any attorney to appear for him for that purpose, nor to have had “at any time before the recovery of judgment in said action any notice or knowledge of any process or summons, or of any proceeding in j said action, or any means or opportunity of [ defending himself therein or therefrom,” as he avers in his special pleas which he offered, but which were rejected in the action brought in this state on the said judgment as afore- ¡ said. The said Henry Bowler no doubt resided in the city of New York when the contract was made, to-wit: in November, 1864, and probably, also, when the said action was brought thereon in New York in June, 1869. If he did not then reside in the city, he no doubt resided elsewhere in the state of New York, as he does not aver in his said special *102 pleas that he was then- a non-resident of the state of New York. His Christian name was then unknown to the plaintiffs or their attorneys in the said action, and continued to be unknown to them until about the 22d day of January, 1874, a few days before the judgment in the said action was rendered, when it was ascertained by one of the said attorneys; and a few days thereafter, and indeed on the very day on which the judgment was rendered, to-wit: the 30th day of January, 1874, it was inserted, for the first time, in the blank which had been left for it in the *proceedings in said action. The said Henry Bowler ceased to be a resident of the city and state of New York, but at what time does not appear, though probably after the said action there was brought, but no doubt before the judgment was rendered therein. When the action was brought in the circuit court of the city of Richmond on the said judgment he resided in the said city, but how long he had previously resided therein does not appear, nor is the fact material.
It was insisted by the counsel for the defendants in error in their argument of this case, that it appears from the record of the action in New York that the defendants appeared in that action by their attorneys, which means that all of the defendants so appeared; and that any or either of the defendants had a right to employ attorneys to appear for all in the action, even though the partnership may have been, as it no doubt was, previously dissolved; the said counsel contending that a partnership, though actually dissolved for all purposes of carrying on the business of the partnership, is considered as continuing until all its business is settled and ended.
In regard to what the record shows as to the appearance of the defendants by their attorneys, it was insisted by the counsel for the plaintiff in error that the word defendants here means only the two defendants, Herbert and Illius, who were actually before the court. But even if it was intended to embrace the third defendant also, Bowler, we have seen that it was still competent for that defendant to traverse the fact that any attorney was employed in the case by him or'on his authority.
In regard to the authority of any of the members of a dissolved partnership to retain an attorney to defend the other members of the late firm in an action brought against them, 'it seems to be now well settled that no such authority exists, unless specially given. It does not result from the partnership itself.
*This was held in a very recent case, decided in 1875 by the supreme court of the United States, Hall & al. v. Lanning & al., 1 Otto 160. There it’was held that a member of a partnership residing in one state, not served with process and not appearing, is not personally bound by a judgment recovered in another state against all the parties after a dissolution of the firm, although the other members were served, or did appear and cause an appearance to be entered for all, and although the law of the state where the suit was brought authorized such judgment; and that after the dissolution of a partnership one partner has no implied authority to cause the appearance of another partner to be entered to a suit brought against the firm. And a quaere is added by the reporter to his caption of the report of said case: Whether such implied authority exists during the continuance of the partnership? But it is unnecessary to decide that question in this case.
It is obvious, and indeed seems to have been admitted by the counsel on both sides in their argument of this case, that the action in New York was under section 136 (as amended in 1866) of the Code of Procedure of that state, page 101, which, so far as it relates to this case, is as follows: “Where the action is against two or more defendants, and the summons is served on one or more of them, but not on all of them, the plaintiff may proceed as follows: 1. If the action be against defendants jointly indebted upon contract, he may proceed against the defendants served, unless the court otherwise direct; and if he recover judgment, it may be .entered against all the defendants thus jointly indebted, so far only as that it may be enforced against the joint property of all and the separate property of the defendants served, and if they are subject to arrest, against the persons of the defendants served,” &c.
Supposing the proceeding to have been had and the ^judgment to have been obtained in New York under the section aforesaid, it is obvious that the judgment can have effect only in the state of New York, and against the joint property of all the defendants and the separate property of such of them only as were served with process there, and against the perspns of the latter if they were subject to arrest: and that it cannot have any effect extra territorium. And at all events, that it cannot have the effect of a judicial proceeding of one state on which judgment may be recovered in another, under the provisions of the constitution of the United States and act of congress aforesaid, against a defendant who was not served with process in such judicial proceeding, and did not appear therein, in person or by attorney. The only purpose of an action in another state on such a judgment, is to obtain a personal judgment against the defendant residing or who may happen to be therein, and who was not served with ^process and did not appear to the first action. The judgment in that action is no evidence against him in an action brought thereon in another state. In its very nature it is confined in its operation to the state in which it was obtained and by which it was authorized. It was not, and could not have been, authorized with a view to another state, or to the provision of the constitution and act of congress aforesaid. At all events it can have no greater effect than would a judgment of a foreign state in an action brought thereon in this state.
The proceedings in this case illustrate the wisdom of confining the operation of a *103 judgment obtained under the aforesaid section of the New York Code of Procedure to the jurisdiction in which it is obtained, and not extending it to other states under the provision of the constitution and act of congress aforesaid, and show that the greatest injustice might otherwise be done.
The defendant in the action in this
state was not served *with process in the action in New York, and did not appear therein, and had no knowledge or information, as he says on oath, of the pendency of that action. He was a member of the firm in the city of New York, which made the contract with the firm in the city of Philadelphia, on which contract that action was brought. The contract was for the purchase of coal, to be shipped from Richmond, Pennsylvania, to Albany, New York. Tt was made in October, 1864; shortly after which the coal was shipped and a bill of exchange at three months was drawn by the vendors 'on the vendees for $1,621, the price of the coal, according to the contract, which bill was accepted by the vendees before they received the coal. When the coal arrived at Albany it was found, as the vendees contended, to be not of the quality contracted for and totally unfit for use, and they offered to cancel the contract; but as that was inconvenient to the vendors, it was agreed, as the vendees contended, that the coal should be retained by them on terms to be adjusted afterwards between them. In May, 1865, long after the maturity of the said bill, the vendees, at the earnest solicitation, as they said, of the vendors, accepted and paid their draft for $1,000, on account of the adjustment that was to be made for the value of the coal; which said sum, the vendees insisted, was more than sufficient to pay for the coal. It does not appear that any further demand was made cf the vendees, on account of the coal, until the 5th day of June, 1869, between three and four years after the said payment of $1,000, when the action in New York was brought by Henry Pluston, to whom the said bill of exchange was endorsed, and who, it seems, was privy to all the facts of the case. The amount claimed in that action was $624, with interest thereon from the 20th day of February, 1865, being the amount of said bill, after crediting the said payment of *$1,000. That action was promptly defended by the defendants, Herbert and Illius; the other defendant, Bowler, not having been served with process or appeared therein, or had, as he says, any knowledge or information thereof, and of course not taking any part in ihe defence. The grounds of the defence were such as to show that, in the view of the parties making ii, they-owed nothing on account of the claim. It seems that there was in July, 1869; some attempt made by the plaintiff in the action to have a settlement with the defendants, but having made default in his proceeding therefor, the same was dismissed by order of the court.
Nothing further appears to have been done in the case from July, 1869, aforesaid, until four and a half years thereafter, to-wit: the 28th day of January, 1874, when the plaintiff’s attorney served the defendant’s attorney with the notice of the taxation of costs in the case, service of which notice the latter thereupon admitted. Two days thereafter, to-wit: on the 30th day of January, 1874, John P. Reed, Jr., 'one of the plaintiff’s attorneys, made oath that on or about the 22d of January, 1874, Charles Illius, one of the defendants in the case, informed deponent that the full name of the defendant, Bowler, therein was Henry Bowler; on said deponent’s motion on the said 30th day of January, 1874. it was ordered by the court, that the summons and complaint in the action be amended by inserting the name Henry before the word “Bowler” in the style of the cause, and that the words. “Whose given name is unknown,” be stricken out. And on the same day last named, the cause was tried by the court and a jury, the defendants not appearing; and a verdict was rendered therein for the plaintiff, for the sum of $1,014.69; and his costs having been adjusted at $210.73, on the motion of his attorneys it was adjudged that the plaintiff recover of the defendants the aggregate of said two sums, $1,225.42.
*It does not appear why the defendants, who appeared to the action in New York, and at first made so earnest a defence therein, upon grounds so plausible, should, after the lapse of more than three years, without any further action having in the meantime been taken in the case, have abandoned altogether their defence, discharged their attorneys, and suffered judgment to go against them by default for the whole amount of the plaintiff’s demand.
It does not appear that any attempt was made after the judgment was rendered, to recover the same or any part of it of the defendants, or either of them, who alone were served with process and appeared and defended the action in New York. Nor does it appear why no such attempt was made, which might have been done by merely suing out process of execution there. The reason may have been that they were bankrupt or insolvent, and that such an attempt would have been vain. And the same reason may account for their having withdrawn their defence and suffered judgment to go by default as aforesaid.
It does appear, however, that immediately after that judgment was rendered, the plaintiff forwarded an exemplification of the record to the city of Richmond, Virginia, and just two months and a few days after the rendition of said judgment, to-wit: on the 6th of April, 1874, an action was brought thereon against the said Henry Bowler in the circuit court of said city for the whole amount of said judgment.
Under such circumstances we think that great injustice might, and probably would be done, by considering the said judgments as coming under the operation of the constitution of the United States and the act of congress aforesaid. But we do not so consider, for the reasons before mentioned.
We have not noticed all the cases referred to in the ’’’argument, deem- *104 mg it unnecessary to do so, and this opinio'n has already been too much prolonged.
We are, therefore, of opinion, that the New York court had no jurisdiction to render judgment against the defendant, Henry Bowler, at least_ such a judgment as could be the foundation of an action thereon against him under the constitution of the United States and the act of congress aforesaid; and that such want of jurisdiction is a good defence in this action; and we are of opinion that such defence may and ought to be made by special pleas; that the three special pleas offered by the defendant were good in form and substance, and ought not to have been 'rejected by the court below. The defence could not have been made under the plea of nul tiel record; and the plea of nil debet was not a good plea. It is contended, however, by the counsel for the defendant in error, that though not a good plea, yet as it was actually plead, and he did not object to it, but joined issue upon it, the defence might have been as well made under it as under a special plea. Without deciding whether it might have been or not, we think the circuit court erred in excluding the special pleas; and that for that error the judgment ought to be reversed and a judgment rendered for the admission of the pleas, and that the cause ought to be remanded for further proceedings to be 'had therein to a final judgment, according to the foregoing opinion.
The judgment was as follows:
The court is of opinion, for reasons stated in writing and filed with the record, that each of the three special pleas in writing tendered by the defendant to, and rejected by the said circuit court, presented a good and valid legal defence to the action, and the said circuit court erred in *rejecting the said special pleas and refusing to permit them to be filed.
Therefore it is considered that the said judgment of the said circuit court is erroneous, and that the same be reversed and annulled, and that the plaintiff in error, Henry Bowler, recover against the defendant in error, Henry Huston, his costs by him expended in the prosecution of his writ of error and supersedeas aforesaid here. And it is further considered, that the cause be remanded to the said circuit court, with instructions to the said court to accept the said special pleas and permit them to be filed, and for further proceedings to be had therein to a final judgment in the case; which is ordered to be certified to the said circuit court of the city of Richmond.
Judgment reversed.