RICE, Appellant, v. BENNETT, Respondent.

(137 N. W. 359.)

1. **Attorney and Client—Authority of Attorney—Presumption—Waiver of Process.**

   The presumption that an attorney, who waives issuance and service of summons, has special authority to do so, is not in itself evidence of special authority, and operates only in absence of evidence, and is eliminated when the evidence for or against special authority is before the court.

2. **Action on Foreign Judgment—Judgment—Reply—Estoppel—Proof.**

   Where defendant in an action on judgment of a court of another state, pleaded that that court was without jurisdiction over his person, in that the attorney who waived issuance and service of summons was without authority to do that act, a denial of such answer is unnecessary; plaintiff could prove an estoppel to deny the jurisdiction, without pleading same in reply.

3. **Judgment—Jurisdiction of Foreign Court—Contest in Domestic Court—Estoppel—Proof.**

   The rule that a defendant in a suit on a foreign judgment need not go into the court rendering that judgment, to contest its jurisdiction over person, even though he has full knowledge of entry of the judgment and all facts connected therewith, does not preclude plaintiff in the present action from proving that the foreign court had such jurisdiction.

4. **Foreign Judgment—Jurisdiction Over Person—Question of Fact—Defense in Either Jurisdiction—Defense of Estoppel by Laches—Pleading.**

   In an action on a foreign judgment, the question whether defendant submitted himself to jurisdiction of the court or was duly served with process is one of fact, contestable herein without a reply to the answer, and equally open to investigation whether relating to jurisdiction of the foreign or a domestic court. But defendant cannot be required to litigate

the question of estoppel by laches—that would make it necessary for him to seek a remedy in the court of rendition of the judgment.

5. **Recitals in Foreign Judgments—Estoppel to Plead Want of Jurisdiction—Assignee of Judgment.**

Recitals in foreign judgments do not estop a defendant from pleading want of jurisdiction. This rule applies to assignees of foreign judgments, who take with full knowledge of all facts appearing of record concerning jurisdiction; and a plaintiff who, without service of jurisdictional process, accepts in lieu thereof a waiver of issuance and service, must investigate such service at his peril; so must his assignee.

6. **Attorney as Agent of Client—Authority to Waive Process—Assignee of Judgment.**

The law of principle and agent, applicable to relation of attorney and client, is such that an attorney cannot without express consent of his client, waive issuance and service of jurisdictional process; and a purchaser of a judgment stands in same position as the plaintiff therein, where the record shows such attempted waiver by one purporting to act as attorney.

7. **Directed Verdict—Both Parties Moving—Verdict, as by Jury.**

Where both parties ask for directed verdict, the verdict stands precisely as one returned by jury; and unless the verdict of a jury would be set aside, it must stand.

8. **Foreign Judgment—Jurisdiction—Burden of Proof.**

In an action on a foreign judgment, involving jurisdiction over defendant, the burden of proof to show special authority of defendant's attorney to waive process rests upon plaintiff.

9. **Attorney and Client—Authority to Waive Process—Sufficiency of Evidence—Presumption.**

In an action on foreign judgments, evidence held not to show that the attorney waiving issuance and service of process in the foreign court was authorized to do so; and where all facts are before the court and fail to disclose such authority, it cannot be presumed.

(Opinion filed, June 25, 1912.)

Appeal from Circuit Court, Minnehaha County. Hon. JOSEPH W. JONES, Judge.

Action by Hiram Rice against Irving Bennett, upon three foreign judgments, assigned to plaintiff. From an order directing verdict for defendant, and from a judgment dismissing the complaint on the merits, plaintiff appeals. Affirmed.

*U. S. G. Cherry,* (*Frank D. Williams* and *Herbert Abbott, of Counsel*), for Appellant.

Evidently the letter of Mr. Bennett of August 20th to Mr. Spear being Exhibit 13, was a mere subterfuge, or after-thought, occasioned by the fact that Mr. Vail, the attorney for the plaintiff herein, had visited Mr. Bennett at Sioux Falls, in the effort to collect the three judgments, shortly prior to the bringing of this suit. Lawyer v. Globe Mut. Ins. Co., —— S. D. ——, 127 N. W. 615; Western Twine Co. v. Wright, 11 S. D. 521; Baker v. Tempe, (Mich.) 125 N. W. 63.

Where an attorney appears for a party in an action and merely exceeds his authority, the party thus represented is bound. He must at least show that the other party to the suit had actual knowledge or notice, sufficient to put him upon inquiry that the attorney was exceeding his authority. Indeed, the great weight of authority is that the party represented by an attorney, appearing for him, is bound, even if there is a total want of authority. And where it is sought to set up this want of authority in a collateral proceeding, the appearance will be conclusive. Ferguson v. Crawford, 70 N. Y. 253, 26 Am. Re. 589; Cyphert v. McClune, 22 Pa. St. 195; 1 Black on Judgments, Sec. 325, 272; Denton v. Noyes, 6 Johns, 295; Brown v. Nichols, 42 N. Y. 27; Benton v. Lyford, 37 N. H. 512, 75 Am. Dec. 144; 2 Enc. Pl. & Pr. 682; Freeman on Judgments, (3d Ed.) Sec. 128; Harshey v. Blackmarr, 20 Iowa, 161, 89 Am. Dec. 520; Hamilton v. Wright, 37 N. Y. 502; Corbitt v. Timmerman, 95 Mich. 581, 55 N. W. 437; Wells on Jurisdiction, p. 76; Annotations, 21 L. R. A. 848; Ferguson v. Goodnow, 70 N. Y. 253, 26 Am. Rep. 589.,

Even where there is a total want of authority on the part of the attorney to appear in an action for a party thereto, yet if such appearance is made, and that fact becomes known to such party and he fails or delays disaffirmance, he will be estopped to afterwards set up such want of authority. Especially will this be true where a third party, in reliance upon the judgment recovered, has purchased the same, and taken an assignment from the judgment creditor. Hemeway v. Thompson, 81 N. E. 52, 75 Id. 791; Logan v. Trayser, 77 Wis. 579; 24 Am. & Eng. Enc. L. 737; 16 Cyc. 795, 3 Id. 535; Great Western v. Mining Co., 13 Am. St. Rep.

204; Williams v. Neth, 4 Dak. 360; Garrison v. McGowan, 48 Cal. 592.

Relief will be denied where the fact of the attorney's want of authority is not fully negatived, but left in doubt under the evidence, and there is no meritorious defense to the action shown. In this case not only is no meritorious defense shown but the record affirmatively shows that the plaintiff herein was an accommodation endorser and paid the defendants's debts and took an assignment of the judgments and these matters are uncontradicted. I Black on Judgments, Section 325.

But where, as in the case at bar, there is not a total want of authority, but where it is claimed the attorney has exceeded secret and undisclosed instructions to him, the party is bound by the attorney's appearance without regard to the rule of laches or estoppel. Harshey v. Blackmarr, 20 Iowa, 161, 81 Am. Dec. 520; Corbitt v. Timmerman, 95 Mich. 581, 35 A. S. R. 586.

There was no opportunity in this case to plead estoppel, plaintiff was not bound to anticipate in his complaint that want of authority to appear would be pleaded in the answer and this court has repeatedly held that a reply is surplusage unless a counterclaim is pleaded or an order of the court made directing plaintiff to reply to new matter set up in the answer.

(Appellant, in Reply.)

Respondent's caustic criticism of Mr. Spear's course in the three Nebraska suits is not well founded. Respondent seems to have wholly overlooked or ignored Exhibits 11 and 12, on pages 16 and 17 of appellant's printed statement, which show conclusively that respondent, after authorizing Mr. Spear to appear, and after knowing that he had appeared, simply abandonded these cases.

Upon the point that no estoppel was pleaded, we are content to refer to the following decisions of this court: Stenson v. Elfmann, 128 N. W. 588; Cornwall v. McKinney, 9 S. D. 213.

C. H. *Winsor,* for Respondent.

At all the times during these transactions the defendant was not a resident of the state of Nebraska, where the judgments were obtained, but was a resident of South Dakota.

A foreign judgment rendered without jurisdiction may be assailed in either a direct or a collateral proceeding. Black on Judgments, sections 835, 895, 897, 901, and 905; Thorn v. Salmon, 37 Kans. 441, 15 Pac. 588.

Estoppel is defined by the courts of South Dakota in Parliman v. Young, 4 N. W. 139; Eickelberg v. Soper, 47 N. W. 953; and is cited in different cases since the last case was determined.

In the case at bar there is no possibility of it being brought within the doctrine of estoppel. No one acted upon anything that Mr. Bennett did, and Mr. Bennett had no knowledge of what had been done for him by Mr. Spear.

The following cases hold that an estoppel to be relied upon must be pleaded. This is particularly true in the code states, where the facts upon which a plaintiff relies are to be set forth in his complaint: Fritz v. Mills, 106 Pac. 725; Nebraska Mortgage Loan Co. v. Blust et al., 60 N. W. 1016; Ransome v. Stanbury, 22 Ia. 334; Phillips v. Van Schaick et al, 38 Ia. 229; Parliman v. Young, (S. D.) 4 N. W. 139.

In closing this brief, I wish to call attention of the court to the case of Kinny v. McKenzie, lately decided by the Supreme Court of South Dakota, in 120 N. W., page 781, and particularly what the court says on pages 783 and 784, regarding the conditions of an estoppel.

SMITH, J. Appeal from circuit court of Minnehaha county. The plaintiff, Rice, as assignee of three judgments, rendered in the district court of Nance county, Neb., commenced an action against Bennett, defendant and respondent, to recover sums aggregating $2,180.11, with interest from February 26, 1906, the date of the judgments in the Nebraska court. The answer was a general denial, and further alleged that defendant had never been served with process in the actions in Nance county, and had never voluntarily appeared therein. Trial April 25, 1911, before a jury. At the conclusion of all the evidence, each party moved for direction of a verdict. Plaintiff's motion was denied, and the motion of defendant sustained. Final judgment dismissing the complaint on its merits was entered May 3, 1911. This ap-

peal is from the judgment, and from the order sustaining defendant's motion for a direction of a verdict.

. Respondent's counsel discusses in his brief certain propositions relating to the procedure adopted in settlement of the statement of the case upon motion for a new trial; but, in view of the conclusion reached upon the merits, it is unnecessary to consider the procedure. The motion for a new trial specified as grounds: first, insufficiency of the evidence to justify the verdict; second, that the verdict was against law; third, errors of law occurring at the trial and excepted to by the plaintiff. Appellant contends that the uncontradicted evidence establishes conclusively that C. E. Spear had authority to appear and did appear as attorney for defendant, I. I. Bennett, in the district court of Nance county, Neb.; that said court thereby acquired jurisdiction of the person of defendant and of the subject-matter of the actions; that the evidence is uncontradicted and conclusive that plaintiff, in the actions pending in the district court of Nance county, believed and relied upon the fact that said Spear had authority to appear for defendant therein; that the plaintiff in this action, Hiram Rice, believed said Spear had authority to appear as attorney for defendant in said actions, and, relying upon such appearance, has acquired for a valuable consideration the three judgments so rendered against defendant; and that defendant in this action should be estopped to assert that Spear had no such authority. The record discloses. that the actions in the Nebraska court were upon certain promissory notes purporting to have been executed by the defendant, Bennett, upon which the plaintiff Rice became accommodation indorser; that Rice was not made a party to said actions, but after entry of the judgments all three were assigned to him.

The main controversy upon this appeal is as to the authority of Spear, an attorney residing at Albion in Boone county, to waive issuance and service of summons in the actions and enter the voluntary appearance of defendant, Bennett. We shall consider these assignments as they are discussed in appellant's brief. The vital question is whether the district court of Nance county,. Neb., acquired jurisdiction by the voluntary appearance of defendant, Bennett. It is not claimed there was any service or at-

tempted service of process upon the defendant personally. At the trial plaintiff offered in evidence duly authenticated copies of the proceedings, and the three judgments alleged in the complaint, which disclosed that a verified complaint in each of said actions was filed in the district court of Nance county, on the 5th day of January, 1905, and that in each of said actions one C. E. Spear, an attorney at law residing in Albion, Neb., on September 9, 1905, filed a written instrument, as follows: "Comes now the defendant, I. I. Bennett, and enters his voluntary apperance in the above-entitled action, and waives the issuance of service and summons in the same. I. I. Bennett, Defendant, by C. E. Spear, His Attorney." An answer in each of said actions was filed by Spear on December 19, 1905. The answer so filed in each case admits the execution of the notes sued upon, coupled with a general denial. The judgments were entered on February 26, 1906, and each contained the following recitals: "This cause came on to be heard, and the said defendant, I. I. Bennett, having failed to answer, defend, or otherwise appear to the petition of plaintiff, and being three times solemnly called in open court, came not nor any one for him. A default is hereby entered against said defendant." Unless Spear had authority to waive issuance and service of proceess, or defendant is estopped from denying it, it is clear that the court was without jurisdiction of the person of the defendant, Bennett, and that the judgments are void.

[1] It seems to be generally held that, where an attorney assumes to acknowledge service of a summons or to waive it, the court will presume, in the absence of proof to the contrary, that he was authorized specially so to do. Backus v. Burke, 63 Minn. 272, 65 N. W. 459; Hendrix v. Fuller, 7 Kan. 331; Taylor v. Sutton, 6 La. Ann. 709; Felder v. Johnson, 1 Bailey (S. C.) 624; Marlin v. Robrecht, 13 W. Va. 440; Northern C. R. Co. v. Rider, 45 Md. 24. This presumption is founded upon the assumption that attorneys as officers of the court will not be presumed to have exceeded their authority, and will be presumed to have been specially authorized to acknowledge or waive service of summons, by those whom they assume to represent. This assumption, however, is not in itself evidence of the fact of special authority, and

is only operative in the absence of evidence, and, when the evidence which proves or disproves special authorization is before the court, the assumption itself is eliminated. It appears from the record that the defendant, Bennett, at some time prior to these proceedings, was for a time a resident of the state of Nebraska, but had become a nonresident of the state, and at the time of these proceedings was a resident of the state of South Dakota. It appears, also, that one H. C. Vail, an attorney residing at Albion, Neb., represented the plaintiff in all three actions, in the Nebraska court. It appears further that on or about August 29, 1905, Attorney Vail met defendant, Bennett, at Omaha, and had a conference with him concerning the claims or proposed actions in which complaints had been filed on the 5th of January, 1905, but in which process had not be served on Bennett. It further appears that, during such conference, the defendant, Bennett, in the presence of Vail, wrote a letter to Mr. Spear, the attorney at Albion, Neb., which was sealed and delivered to Spear by Vail about that date. This letter was as follows: "Omaha, Aug. 29, 1905. Mr. C. E. Spear, Albion, Neb.—Dear Sir: I am defendant in some cases at Fullerton brought by Albion National and Sticklen, and I want you to look after my interests at Fullerton. Yours Resp. I. I. Bennett. Address Omaha."

In response to this letter, Spear on August 30, 1905, wrote Bennett at Omaha, Neb., a letter, which was received by him, as follows: "Dear Sir: I am in receipt of your favor of Aug. 29th, relative to certain actions now pending in Fullerton. I will enter an appearance in these cases as your attorney, and will take such steps as I consider for your best interests. As soon as I have examined the papers, I will write you again as to what course I think you had better pursue. Very truly yours, C. E. Spear." In response to this letter, Bennett wrote Spear, under date of September 9, 1905, as follows: "Dear Sir: Your letter to hand and note that you will advise me in a few days what course you will pursue in the cases at Fullerton. I am very anxious to hear from you at the earliest possible date."

Under date of September 14, 1905, Spear wrote Bennett at Omaha, Neb., as follows: "Replying to yours of the 9th, will

say that I have been informed that you desired me to make·appearance in several cases now pending in Nance county against you.    This is all the information I have further than the letter that you sent me by Mr. Vail.   I understand that you do not care to resist the claim of the plaintiff, but enter your ·appearance in the cases for a different purpose.   I would be pleased to hear from you as to just what your. position in these cases is, and just what you expect to do relative to them.   I am willing to follow any course you may suggest but am so far left in the dark in relation to the cases.   I have failed to receive from Mr. Vail copies of the papers filed in this case, and until I see them it will be impossible for me to suggest anything." Bennett testified that he does not remember receiving this letter.

On September 27, 1905, Spear wrote to Bennett at Omaha, Neb., as follows: "Dear Sir: I shall be in Omaha all of next Thursday, Oct. 5, and would be pleased to know where I can meet you at that time.   Please let me hear from you at your earliest convenience."

In response to this letter, Bennett wrote Spear on October 2, 1905, as follows: "Dear Sir: If nothing interferes I will meet you at the Paxton Hotel, Thursday noon.   (12, 12-15)."

Spear left for Omaha without receiving this letter, and on October 6, 1905, wrote Bennett: "Dear Sir: I have just returned from Omaha, where I have been the past three days.   I left there the evening of the 3d and I find your letter did not reach here until the 4th.   I regret that I did not receive your favor before I left.   I am perfectly in the dark as to what you desire done. I must have ·some understanding with you soon."

On October 13, 1905, Spear wrote Bennett, at Omaha, Neb.: "Dear Sir: I have received no answer to my last letter and am still at a loss as to what to do in your Nance county cases.   I do not care to stay in these cases unless I am better informed as to what your idea in regard to a defense.   I have spoken to Mr. Vail regarding the matter but about all that I can get from him is that I should appear for you.   I. have not received a copy of the files, and for that reason know but very little about the issues raised or the condition of the cases.   Please let me hear from

you." Bennett testified that he did not remember having received this letter.

On the 8th day of November, 1905, Spear wrote Bennett as follows: "Dear Sir: It seems that we are getting no nearer to an understanding relative to your suits now pending in Nance county. It is impossible for me to be of any advantage to you or to proceed any further until I do ascertain what you desire. Upon receipt of this, please write me on what date I can meet you in Omaha. Of course, I do not know that I could be there on the day that would be convenient for you, but if not I will notify you. Unless I hear from you within a short time, I shall withdraw from these cases for the reason I do not care to be responsible as an attorney, in a case where it is impossible for me to do anything. Hoping to hear from you in the near future, I remain." Bennett testified that he did not remember having received this letter.

On December 19, 1905, Spear wrote to Bennett at Sioux Falls a letter as follows, which was received by Bennett: "Dear Sir: I regret that I have not heard from you definitely regarding the cases against you at Fullerton. As instructed I entered your appearance but have received no information from you directly as to what you desire done. I have been informed indirectly that you do not wish to oppose the claims of the banks and the other party who holds notes indorsed by Mr. Rice. In other words you would not care to stand in the way of the plaintiffs in this action to prevent them enforcing their attachments. I inclose herewith authority for you to sign, giving me the power to appear and file an answer of admission on your part. If this is what you want, sign this paper and return to me immediately. If you do not want me to do this, write me at one before any advantage is taken by reason of my appearance in this case. It will probably be necessary to take your deposition before this matter terminates, and if so, I will meet you at Sioux Falls for that purpose. Of course Mr. Rice will be compelled to stand the expense of this deposition. Do not fail to write me immediately upon receipt of this letter as I am now in a very awkward position regarding these cases. I have no other purpose in appearing

than to do what you desire done, but so far I have been unable to learn from you just what your wishes are."

Certain other letters passed between them which add nothing material to the facts above disclosed.

It is appellant's contention that upon the facts disclosed by the record defendant is estopped to dispute the jurisdiction of the Nebraska court and is further estopped from denying the authority of Spear to waive service of process and submit his client to the jurisdiction of the Nebraska court.

It is respondent's contention that a defendant in an action on a foreign judgment may plead want of jurisdiction in any case, and that appellant's authorities relate to actions on domestic judgments which may not be attacked collaterally, but only directly, in the courts which rendered them, citing, Black on Judgments, § 275, where it is said: "The preceding sections show the immense preponderance of authority to be in favor of the rule that a judgment of a superior court can never be impeached collaterally for want of jurisdiction not appearing on its face. This rule, as we stated, is limited to domestic judgments, for, in the case of a judgment coming from a sister state or a foreign country, it is agreed on all hands that want of jurisdiction may always be shown against it. But this is a special and peculiar question and must be carefully separated from the point now under consideration. That being done, we still find a certain number of cases squarely denying the general accepted rule. It is held in Texas that the doctrine of the absolute verity of a record does not apply when the want of jurisdiction is made a question. 'This may always be set up when a judgment is sought to be enforced or any benefit is claimed under it, and this is not inconsistent with the principle which ordinarily forbids the impeachment or contradiction of a record.'" Fitzhugh v. Custer, 4 Tex. 391, 51 Am. Dec. 728; Thouvenin v. Rodrigues, 24 Tex. 468; Smith v. Tupper, 4 Smedes & M. (Miss.) 261, 43 Am. Dec. 483; Brown v. Balde, 3 Lans. (N. Y.) 283. So in New York: "The want of jurisdiction in a court rendering a judgment may be shown collaterally whenever any benefit or protection is sought under the judgment." Putnam v. Man, 3 Wend. (N. Y.) 202, 20 Am. Dec. 686.

We think, however, it may well be doubted whether any sub-stantial differences exists between foreign and domestic judg-ments where want of jurisdiction is interposed as a defense, save in those cases in domestic courts wherein a defendant, by reason of laches or acquiescence, has permitted a state of facts to arise pre-judicial to the rights of third parties without notice, or other facts appear of such character as to warrant the application of the doctrine of estoppel under well-settled principles of equity. See Ferguson v. Crawford, 70 N. Y. 253, 26 Am. Rep. 589. Judge Rapello in that case said: "As has been already stated, our courts have settled by adjudication, in regard to judgments of sister state, that the question of jurisdiction may be inquired into and a want of jurisdiction over the person shown by evidence, and have further decided (in opposition to the holding of courts of some of the other states) that this may be done, even if it in-volves the contradiction of a recital in the judgment record. In stating the reasons for this conclusion, our own courts have founded it upon general principles quite as applicable to domestic judgments as to others, and save in one case (Kerr v. Kerr, 41 N. Y. 272) have in their opinions made no discrimination be-tween them." See Williams v. Neth, 4 Dak. 360, 31 N. W. 630. [2] But the real question here appears to be whether the same facts which might warrant the vacation of a judgment, or which might justify a denial of such relief on the ground of estoppel or otherwise, if the application were made in the foreign court, would be decisive in an action in this state on the foreign judg-ment, where the defense is that the court which entered the foreign judgment was without jurisdiction.

We shall consider, first, the contention of respondent that facts constituting an estoppel against the defense that the foreign court was without jurisdiction may not be proved by plaintiff in this action, because such facts are not pleaded in the complaint. This contention is founded upon a misconception of the manner in which the issue arises in this action. The allegations of the complaint are sufficient to constitute a cause of action on judg-ments rendered in a court of record of the state of Nebraska. The answer sufficiently sets forth that the court which purported to

render these judgments was without jurisdiction over the person of the defendant, in that the attorney who purported to waive issuance and service of process in that court was without authority to do that act. The facts pleaded in the answer do not constitute a counterclaim, but are wholly matters of defense. It is the well-settled rule of this court that a reply is neither necessary nor proper in response to purely defensive matter; that such matters are deemed denied, and, under the statutory denial, anything may be proved which in law would defeat the effect of the defensive matter pleaded in the answer. It is clear, therefore, that any matter which would be competent to estop defendant from availing himself of the defense may be proved without any further pleading. The matters constituting the supposed estoppel in this case are no part of the plaintiff's cause of action, and need not be pleaded in the complaint, but may be proved under the statutory denial, to destroy the defense of want of jurisdiction. In other words, the statutory "denial" of defensive matter in the answer is to be deemed a sufficient pleading to permit the plaintiff to prove under it any matters which would destroy the defense itself. We are inclined to the view that facts which in law might constitute an estoppel, by reason of laches only, are not available to plaintiff in this action to estop defendant from pleading and proving want of jurisdiction in the Nebraska court.

[3] If it be assumed that the Nebraska court was without jurisdiction, the defendant was entitled to rely upon that fact and could not be required to go into that state to contest the question of jurisdiction, even though he had full knowledge of the entry of the judgment and of all the facts and circumstances connected therewith. But this rule by no means precludes the plaintiff in this action from proving or showing in any proper manner that the Nebraska court in fact acquired jurisdiction of the person of defendant through an appearance by a duly authorized attorney, or otherwise.

[4] The question whether a defendant has submitted himself to the jurisdiction of a court, or has been duly served with process, is one of fact, and is precisely the same in substance and

effect, whether it be presented upon an inquiry relating to the jurisdiction of a court of another state, or of a court of this state. The application of the doctrine of estoppel by laches would make it necessary for defendant to seek a remedy in the courts of another state, which he cannot be required to do; but we see no reason why the issue of fact as to the authority of an attorney or the actual service of process may not be litigated as disputed facts in this court, without any reference whatever to any procedure which might or might not be had in the Nebraska court. It must follow, of course, that the proceedings relevant to jurisdiction may be proved upon the trial of such an issue in the courts of this state. It is also clear that such matters as are relevant to that issue may properly be proved under the statutory denial of the matters alleged in the answer. It is unnecessary, therefore, to further discuss the distinction recognized by decisions of both state and federal courts as to the different effects which are given to domestic and foreign judgments when sued upon in the courts of this state. It is sufficient, for the purposes of this appeal, to recognize the well-established doctrine that the question of jurisdiction of a court of another state over the person of a defendant or of the subject-matter of the action is always open to inquiry and investigation in actions in our own courts upon judgments rendered in the courts of other states. Christmas v. Russell, 5 Wall. 305, 18 L. Ed. 475; Knowles v. Gaslight Co., 19 Wall. 58, 22 L. Ed. 70; Kingsbury v. Yniestra, 59 Ala. 320; People v. Dawell, 25 Mich. 247, 12 Am. Rep. 260; Bowler v. Huston, 71 Va. 266, 32 Am. Rep. 673, Hall v. Lanning, 91 U. S. 160, 23 L. Ed. 271; Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565; Graham v. Spencer (C. C.) 14 Fed. 603; Black on Judgments, § 897.

[5] It becomes necessary, therefore, to consider the facts as disclosed by the record, to ascertain whether any sufficient ground of estoppel was shown by appellant, to defeat the plea. It is appellant's contention, first, that he became owner of the judgments sued upon relying on the records of the Nebraska court, and that the recitals in such records should be held to estop defendant from denying the jurisdiction of that court.

It is settled law that recitals in foreign judgments do not estop a defendant from pleading want of jurisdiction. But fur-

ther than this, when appellant became the owner of these judg-
ments, he acquired them with full notice of all facts, recited in
the records themsellves, as to the mode in which jurisdiction was
originally attempted to be acquired. He took them with knowl-
edge that jurisdiction was acquired, if at all, by an attempted
waiver of the issuance and service of original process by one who
assumes to act as attorney for the defendant. It appears to be
well settled that a plaintiff who, without service of jurisdictional
process, accepts in lieu thereof a waiver of the issuance and ser-
vice of process by an attorney, takes his own chances as to the
authority of the attorney, and must investigate such authority at
his peril. Weeks on Attorneys at Law, § 207. We see no reason
for holding that one who becomes the owner of a judgment
wherein the record discloses the same facts should not be bound
by the same rule.

[6] The law of principal and agent is generally applicable to
the relation of attorney and client. Weeks on Attys. at Law, §
216.

It is well settled that an attorney cannot waive substantial
rights of his client without the latter's express consent. Howe
v. Lawrence, 22 N. J. Law, 99; Dickerson v. Hodges, 43 N. J.
Eq. 45, 10 Atl. 111. Under this rule, one who is employed merely
as an attorney at law has no authority to waive issuance and ser-
vice of jurisdictional process. In Masterton & Hoyt v. LeClaire,
4 Minn. 163 (Gil. 108, a leading case many times cited as an
authority, the court says: "It is no part of the duty of an at-
torney, nor is it within his power as an attorney, to admit service
for his client of an original process by which the court obtains
jurisdiction for the first time of his person. To exercise such a
power and bind his client, he would require a special authority,
and in the performance of the duty he would act as an attorney
in fact, and not as an attorney of the court. The relation existing
between the attorney and the defendant for whom he admitted
the service would be more that of principal and agent than at-
torney and client. The latter relation only begins when the court
has obtained jurisdiction of the party to the suit, and his appear-
ance therein by attorney. To perfect the proof of service of the

process upon the defendant, there should have been proof of the authority of Masterton to make the admission for him, and also proof of the genuineness of Masterton's signature as attorney." Bradley v. Welch, 100 Mo. 258, 12 S. W. 911; Reed v. Reed, 19 S. C. 548. In Ashcraft v. Powers, 22 Wash, 440, 61 Pac. 161, as appears by the headnote, the court holds: "An attorney cannot cannot accept service of an original process for his client as a part of his duty as an attorney and a judgment entered upon such an acceptance constitutes reversible error, unless it is shown that special authority has been conferred upon the attorney to exercise such power." In Starr v. Hall, 87 N. C. 383, the court said: "The authorities with reference to the right of an attorney to bind his client by accepting service of process for him leave no room to doubt the correctness of his honor's ruling in this case. An attorney cannot, under his general authority, accept service for his client of the original process by which the action is begun. * * * To exercise such a power would be to act rather as an agent or attorney in fact, than as an attorney of the court, and to give effect to it, therefore, there must needs be a special authority for it; and as the law is plain that the summons must be personally served upon the defendant, if a party will take upon himself the responsibility of discarding the mode prescribed by law, and admit of a waiver of such service by an attorney, he is bound to see to it that the latter has the authority to act, or else the inconvenience must be on himself." A purchaser of such a judgment certainly is in no better or different position than the plaintiff in the action, where the record itself shows the attempted waiver of issuance and service of process by one purporting to act as attorney. This appeal therefore rests upon the single question whether it appears from the record that special authority was given to Spear by defendant, Bennett, to waive issuance and service of original process, and submit his client to the jurisdiction of the court which rendered the judgment.

[7] Ordinarily, the question of authority would be one of fact for a jury under proper instructions from the trial court. Howard v. Smith, 33 N. Y. Super. Ct. 124; Alspaugh v. Jones, 64 N. C. 29. In this case, however, both parties having

moved for direction of a verdict, the question of fact, if any exists, is submitted to the trial court, and is to be reviewed upon appeal like other decisions upon questions of fact submitted to the court. Where both parties have asked for a directed verdict, the verdict stands precisely as would a verdict returned by a jury upon the same evidence, and, unless the verdict of a jury would be set aside, the verdict directed by the court must stand. Farmen v. U. S. Express Co., 25 S. D. 96, 125 N. W. 575. At the trial in the court below, plaintiff himself introduced in evidence the judgment records, which disclose the attempted waiver of service of process by Spear, an attorney at law. If it be held, as in some of the decisions, that it will be presumed some evidence of special authority of the attorney to waive process was before the court which rendered the foreign judgment, that presumption, as we have hereinbefore observed, became inoperative when all the facts with reference to the authority of the attorney were presented to the trial court by plaintiff and defendant under the jurisdictional issue.

[8]   The trial court, in passing upon defendant's motion for a directed verdict, in effect must have found that Spear, as an attorney at law, was without authority to bind his client by a waiver of process, and that the evidence failed to disclose any special authority from his client, Bennett. The burden of proof to show such special authority clearly rested upon plaintiff, who was seeking to enforce a judgment whose validity rested solely upon such authority.

[9] We have examined the entire record with much care, and while the evidence conclusively shows that Spear was retained and employed as an attorney by defendant, Bennett, to look after his interests in certain actions described as pending in the district court of Nance county, there is an entire want of evidence to show that Bennett specially authorized Spear to waive issuance and service of process in such actions. It is true, the record shows that Bennett was informed that Spear had entered an appearance for him in these actions. It is also clear that Bennett knew that no jurisdictional process had been served upon himself, personally, in the state of Nebraska. But he must be presumed

also to have known that a waiver of service of process would not be binding upon him because he had given Spear no authority to waive service, and that, if plaintiff attempted to rely or enter judgment upon an attempted waiver, it would be at his own peril, and that such waiver would not confer jurisdiction. Upon the trial of the jurisdictional issue, where all the facts are before the court, and the facts do not disclose the special authority to waive service of process, such authority cannot be presumed.

We find no error in the record, and the judgment and order of the trial court are affirmed.