NATIONAL SURETY COMPANY, APPELLANT, v. THOMAS LOVE, APPELLEE.*

FILED JULY 14, 1920. No. 21086.

1. Judgment: VALIDITY. Section 1, art. IV of the Constitution of the United States, requiring that full faith and credit shall be given to the judgment of a sister state, has no application to such

* Reversed on rehearing. See opinion, p. —, *post*.

a judgment rendered against one of several joint obligors who was a nonresident of the state, and had no notice or knowledge of the pendency of the action, and did not appear therein. *D'Arcy v. Ketchum*, 11 How. (U. S.) *165; *Thompson v. Whitman*, 18 Wall. (U. S.) 457; *Knowles v. Gaslight & Coke Co.*, 19 Wall. (U. S.) 58; *Hall v. Lanning*, 91 U. S. 160.

2. ———: CONCLUSIVENESS. A judgment rendered against an indemnitee on a bond upon which he was surety is not conclusive upon the indemnitor of his liability thereon, when such indemnitor was a nonresident of the state in which the judgment was rendered, and had no notice or knowledge of the pendency of the action on the bond, and did not appear therein.

3. **Evidence:** JUDICIAL RECORD: AUTHENTICATION. It is indispensable to the authentication of a judicial record of a sister state that it have attached thereto a certificate of the presiding judge that the attestation is "in due form" or "in due form of law." *Chapman v. Chapman*, 74 Neb. 388; Rev. St. 1913, sec. 7979.

4. **Evidence** examined, and *held* to sustain the judgment of the trial court.

APPEAL from the district court for Sioux county: WILLIAM H. WESTOVER, JUDGE. *Affirmed.*

*F. S. Baker* and *Crane, Boucher & Sternberg,* for appellant.

*J. E. Porter, O. W. Percy* and *Tyrrell & Westover, contra.*

CAIN, C.

In this action the National Surety Company sued the defendant, Love, to recover the sum of $650.80 upon a written contract executed by Love to indemify the company for any loss, damage or expense it should sustain by reason of becoming his surety upon an attachment bond executed on the 8th day of May, 1914, in a case where he sued one Al Crystal in the circuit court of Klamath county, Oregon, to recover the sum of $1,000. The case was tried to the court without a jury, and, on May 12, 1919, resulted in a judgment dismissing plaintiff's action. Plaintiff appeals, assigning as error that the judgment is contrary to law and to the evidence.

The facts are somewhat involved, but will be stated with as much brevity as possible, as follows: On May 8, 1914, Thomas Love began an action and attachment proceeding against Al Crystal in the Oregon court to recover $1,000 for money had and received, and the plaintiff herein became surety on the attachment undertaking. The attachment was levied upon a stock of liquors and bar fixtures belonging to Crystal in Klamath Falls, Oregon, but he gave a redelivery bond with Powell and Montgomery as his sureties, and again got possession of his goods. On August 14, 1914, upon the affidavit of Love a successive writ of attachment issued, which was served on August 20, 1914, by garnishing $1,000 in the hands of the First State & Savings Bank of Klamath Falls. In the case of Love v. Crystal, plaintiff was represented by C. M. O'Neill, and the defendant by W. H. A. Renner, assisted by J. C. Rutenic and Joseph S. Kent, all of Klamath Falls. On August 20, 1914, Love's attachment case was dismissed upon his own motion, the order of court reciting that an adjustment had been made of all differences between the parties by the sureties on the redelivery bond, "who settled all matters pertaining to said cause of action." It is undisputed that, a day or two before the order of dismissal was entered, O'Neill, the attorney of record for Love, and Renner, the attorney of record for Crystal, met together and discussed the settlement of the case, and agreed upon the terms of settlement; that they together went and saw Powell, one of the sureties on the redelivery bond, and that Powell paid O'Neill $1,000 in settlement of the case in the presence of Renner, and that O'Neill and Renner were both present in court when the order of dismissal was entered. From that point there is a conflict between the testimony of O'Neill and that of Renner. O'Neill testifies that a stipulation of settlement was drawn up in triplicate and signed by himself and Renner. Renner denies this, and takes the

ground in his testimony that, at the time the settlement was made, although he was still Crystal's attorney, he was not acting for him, and that Crystal knew nothing about it until from one to six months later, and that the $1,000 paid to O'Neill was not Crystal's money, but that Powell paid it out of his own funds to escape a prospective additional liability of $250 on the redelivery bond. Renner testified that he did not represent the sureties on the redelivery bond at the settlement, and accounts for his participation by saying that he did represent the Jesse Moore Hunt Liquor Company, which had idemnified these sureties. On the other hand, O'Neill testified in open court very fully to all the circumstances attending the settlement, and explained that the $1,000 paid was really Crystal's money that had been garnisheed in the bank, and that Renner was acting for Crystal; and his testimony shows that he had no suspicion that Renner was really representing an undisclosed client. A careful examination of the record convinces us that the trial court was right in adopting O'Neill's version of the settlement. We hold that the evidence clearly establishes the fact that a complete settlement of the attachment case of Love v. Crystal was made between the parties thereto acting through their respective attorneys. The payment by Crystal of the full amount claimed by Love was a confession of the justice of the claim, and, as under the Oregon law an attachment seems obtainable on plaintiff's affidavit that his claim is just, it follows that the writ did not issue wrongfully, and that there was no liability on the attachment bond.

But appellant insists that there was an adjudication that there was no settlement by Crystal and that the attachment wrongfully issued, in an action in the same Oregon court, wherein Crystal sued the National Surety Company and Love for damages on the attachment bond on the alleged ground that the writ wrongfully issued. The last case was begun on March 8, 1915, and

again Crystal was represented by Renner, and the Surety Company by Rutenic and Kent, who had been •attorneys for Crystal in the attachment suit. Love was then a nonresident of Oregon, was not notified of the suit, did not appear, and knew nothing of its pendency. Under these circumstances, the provision of the federal Constitution requiring full faith and credit to be given the judgment of a sister state has no application, and the defendant is not concluded thereby, even though he might be so concluded under its laws. *D'Arcy v. Ketchum,* 11 How. (U. S.)*165; *Thompson v. Whitman,* 18 Wall. (U. S.) 457; *Knowles v. Gaslight & Coke Co.,* 19 Wall. (U. S.) 58; *Hall v. Lanning,* 91 U. S. 160.

Moreover, there is in the instant case no proof of the judgment of the Oregon court, except what purports to be a copy thereof certified by the clerk of the court only. There is no certificate of the presiding judge, as required by section 7979, Rev. St. 1913, which this court has held to be indispensable to its authentication. *Chapman v. Chapman,* 74 Neb. 388. However, what purports to be a copy of the judgment of the Oregon court shows that, on January 7, 1916, Crystal recovered a judgment for $500 against "the defendant, National Surety Company," only. We are of the opinion, therefore, that the judgment of the Oregon court in the case of Crystal v. The Surety Company is not, in any view, conclusive upon Love, who was a nonresident, and had no notice of the suit, and that there was no adjudication against the settlement or of the wrongful issuance of the attachment. Those questions were still open at trial of this case, and depended for their decision upon the evidence. *Henderson v. Eckern,* 115 Minn. 410; Ann. Cas. 1912D, 989. In 22 Cyc. 106, it is said: "The omission to give notice to the indemnitor does not go to the right of action against him, but simply changes the burden of proof, and imposes upon the indemnitee the necessity of again litigating and establishing all of the actionable facts."

And again at page 93, it is said: "But unless notice is given the first judgment is *prima facie* evidence only of liability and the indemnitor may show that the indemnitee had a good defense which he neglected to set up."

We have seen that there is ample evidence to establish the fact that the case in which the attachment bond was given was fully settled and dismissed, and that there is no evidence whatever that the attachment was issued wrongfully, but, on the contrary, a fair inference is that it was properly issued. The surety company, therefore, had a good defense against the action brought against it by Crystal in Oregon. In short, there was, in our opinion, no liability against the company on the attachment bond, and this defense is still available to this plaintiff indemnitor. It is against only actual legal liabilities that the contract of indemnity engages, and not against such as are fictitious or imaginary. Still, it may be urged that the surety company was sued in Oregon, and paid a judgment, and at least was put to the expense of interposing a defense. To this suggestion we have to say that the foregoing observations are sufficient answer. But there is still another fact which deserves attention in this connection. It is true that in the trial of the Oregon case of Crystal v. The Surety Company, plaintiff herein, the company "set up" in its answer the defense that the attachment suit had been settled. But, it must be added, the company neglected to establish it by evidence. The evidence of O'Neill, who had left Klamath Falls, might have been taken by deposition, but it was not. Even Manning, his partner, who lived at Klamath Falls, could have been produced as a witness, but no attempt was made to do so. Love was absent in Nebraska, and only feeble and futile efforts were made to reach him for the service of summons, and none at all to get his testimony. In fact one or both attorneys for the surety company seem to have been favorably impressed with Renner's unique theory that, while he was

the attorney for Crystal at the time of the settlement, and was participating therein, he was not really acting for him in the matter.

This case was loosely tried in the court below. Depositions of the attorneys, Renner, Kent, Rutenic, and the clerk, Chastain, were taken twice. Some were offered in evidence and some were not. At the close of the trial, on June 3, 1918, a stipulation was made that plaintiff's attorneys might take additional depositions, which was done in November, 1918. All depositions are attached to the bill of exceptions. Other questions are raised by both parties, but our conclusions obviate the necessity of considering them.

The evidence is sufficient to sustain the judgment of the trial court, and it is right.

We recommend that the judgment of the district court be affirmed.

Per Curiam. For the reasons stated in the foregoing opinion, the judgment of the district court is affirmed, and this opinion is adopted by and made the opinion of the court.

Affirmed.