## WEIN v. CROCKETT, District Judge, et al.

No. 7128. Decided June 23, 1948. (195 P. 2d 222.)

A. W. *Sandack*, of Salt Lake City, for plaintiff.

D. *Howe Moffat*, T. *Quentin Cannon*, and *Ralph A. Sheffield*, all of Salt Lake City, for defendants.

LATIMER, Justice.

In dealing with the parties to this action, Morris M. Wein will be referred to as plaintiff and C. C. McDermond as defendant. The facts as detailed in this opinion are as indicated in the pleadings and may not be the same as those ultimately determined if the matter is tried on the merits.

On or about May 1, 1947, Morris M. Wein, a resident of the State of California, entered into a contract with de-

fendant, C. C. McDermond, a resident of Salt Lake County, wherein he, Morris M. Wein, agreed to pay C. C. McDermond the cost of constructing a certain building plus a 10 per cent fee for C. C. McDermond's services as contractor. The construction was completed on or about June 1, 1947, and as a result of the service performed, Morris M. Wein became indebted to C. C. McDermond for the sum of $6,-655.22.

Plaintiff had not and has not now complied with Section 3 of Chapter 10, Laws of Utah, 1947, which required that he file a certificate of designation of agent with the secretary of state prior to doing business in the State of Utah; the certificate to include the name and place of business of the agent upon whom service of process may be had.

On August 11, 1947, defendant commenced an action against plaintiff by filing a complaint, and in his complaint he alleged that plaintiff was a non-resident of the State of Utah, and that plaintiff was engaged in and had conducted a certain business within Salt Lake County which was known as Bingo Lodge; that the construction of the building was to permit and foster the carrying on of said business. On the same date defendant caused a summons in the action to be served upon Julius Wein, an agent operating the business for the plaintiff at the time the summons was served.

On August 29, 1947, plaintiff appeared specially in that action in the court below and moved to quash the service of summons. This motion to quash was denied by the district court, and plaintiff now seeks a writ of prohibition to prevent further proceedings in the district court. On the 22d day of October, 1947, an alternative writ of prohibition was issued by this court on an order to show cause, and the matter is now before us on the question of either making the writ permanent or recalling the alternative writ previously issued.

The plaintiff is an individual who resides in the State of California; he has never appointed any person in this state as his agent for the purpose of being served with pro-

cess; and he has not voluntarily entered an appearance in this action.

On May 13, 1947, Chapter 10, Laws of Utah 1947, became effective. This Chapter provides as follows:

Section 2.

"When a non-resident person is associated in and conducts business within the State of Utah in one or more places in his own name or a common trade name, and said businesses are conducted under the supervision of a manager, superintendent, or agent, said person may be sued on any action arising out of the conduct of said business in his own name, and the summons in such cases may be served on said person personally or may be served upon his manager, superintendent, or agent, as the case may be, as provided in Section 104-5-11 (10)."

Section 3.

"Every non-resident person doing business as provided in the preceding section shall file or cause to be filed a certificate, under oath, with the Secretary of State of the State of Utah, setting forth the name of and place of business of his manager, superintendent, or agent upon whom service of summons may be had and shall file said certificate setting forth the name of said manager, superintendent, or agent on or before the 15th day of January in each year with the Secretary of State of the State of Utah."

There are two questions presented for our consideration: The first and principal one being whether or not Chapter 10, as herein quoted, violates Article 4, Section 2, of the United States Constitution, the 14th amendment to the United States Constitution, and Article 1, Section 7, of the Constitution of the State of Utah; the second question being whether or not the service of summons is invalid because Chapter 10, Laws of Utah 1947, was not in force or effect at the time the alleged oral contract was entered into.

In treating the first question, we will attempt to follow the trend of the decisions involving the validity of statutes authorizing service of summons on nonresident defendants as announced by the Supreme Court of the United States and as followed by the state courts. While all cases treating the subject will not be referred to, those charting changes

in the course that has been followed by the Supreme Court will be mentioned.

Some of the early Supreme Court of the United States cases dealing with the subject of jurisdiction of the person are the following: In *Kendall* v. *United States,* 12 Pet. 524, at page 623, 9 L. Ed. 1181, the court said:

"* * * No court can, in the ordinary administration of justice, in common law proceedings, exercise jurisdiction over a party unless he shall voluntarily appear, or is found within the jurisdiction of the court, so as to be served with process. Such process cannot reach the party beyond the territorial jurisdiction of the court."

In *Boswell's Lessee* v. *Otic,* 9 How. 336, at page 348, 13 L. Ed. 164, it was said:

"Jurisdiction is acquired in one of two modes: First, as against the person of the defendant, by the service of process; or secondly, by a procedure against the property of the defendant within the jurisdiction of the court. In the latter case the defendant is not personally bound by the judgment, beyond the property in question."

In *Webster* v. *Reid,* 11 How. 437, at page 459, 13 L. Ed. 761, it was held that:

"* * * No person is required to answer in a suit on whom process has not been served, or whose property has not been attached. * * *"

In *Cooper* v. *Reynolds,* 10 Wall. 308, 316, 319, 19 L. Ed. 931, Justice Miller, while recognizing the general rule stated above, mentions certain cases in which a state may provide for constructive service, viz.,

"* * * when the judgment is to have an effect on personal rights, as in divorce suits, or in proceedings to compel conveyance, or other personal acts * * *." *Galpin* v. *Page,* 18 Wall. 350, 21 L. Ed. 959, and *Hall* v. *Lanning,* 91 U. S. 160, 23 L. Ed. 271, are to the same effect.

These cases were some of the earliest wherein the Supreme Court treated the question of the jurisdiction of a court to enter a personal judgment against a nonresident

defendant and all were decided prior to the 21st day of January, 1878.

On that date, the Supreme Court in the case of *Pennoyer* v. *Neff*, 95 U. S. 714, 24 L. Ed. 565, passed on the validity of a personal judgment obtained in an Oregon court by serving a nonresident defendant by publication of summons. Mr. Justice Field delivered the opinion of the court which held that the state through its tribunals, could subject property situated within its confines and owned by nonresidents to the payment of the demands of its own citizens; that the exercise of that jurisdiction would not infringe upon the sovereignty of the state where the nonresidents were domiciled; that every state owed protection to its own citizens, and when nonresidents dealt with them, it was a legitimate and just exercise of authority to hold and appropriate property owned by such nonresidents to satisfy the claim of local citizens; however, that if nonresidents had no property in the state, there was nothing upon which the tribunals could adjudicate, and jurisdiction could not be obtained over the nonresident defendant. The court did not foreclose a resident of a state from proceeding, under all circumstances, against a nonresident defendant as is indicated by the following quotation from the prevailing opinion:

"Neither do we mean to assert that a State may not require a nonresident entering into a partnership or association within its limits, or making contracts enforceable there, to appoint an agent or representative in the State to receive service of process and notice in legal proceedings instituted with respect to such partnership, association, or contracts, or to designate a place where such service may be made and notice given, and provide, upon their failure, to make such appointment or to designate such place that service, may be made upon a public officer designated for that purpose, or in some other prescribed way, and that judgments rendered upon such service may not be binding upon the nonresidents both within and without the State. As was said by the Court of Exchequer in *Vallee* v. *Dumergue*, 4 Exch., 290, 'It is not contrary to natural justice that a man who has agreed to receive a particular mode of notification of legal proceedings should be bound by a judgment in which that particular mode of notification has been followed, even though he may not have actual notice of them'."

In 1918, that Court in the case of *Flexner* v. *Farson*, 248 U. S. 289, 39 S. Ct. 97, 63 L. Ed. 250, upheld a judgment of the Supreme Court of the State of Illinois which refused to enforce a Kentucky judgment obtained under the following statement of facts: That the transaction in respect of which the judgment was rendered took place in Louisville, Kentucky, and at that time, the defendants as partners were transacting business there through an agent; that the defendants were nonresidents, and summons was not served upon either defendant personally, but was served upon the agent in accordance with a Kentucky statute permitting a summons to be served upon an agent; and that at the time service was made on the agent, he was no longer employed in that capacity.

Mr. Justice Holmes, who delivered the opinion of the court, while mentioning the fact that at the time of service of summons, the agent was no longer occupying that status, reasons out a difference between cases involving foreign corporations and cases involving nonresident persons. The theory in that case being that a state could prevent a corporation from doing business within its confines unless it consented to be sued within the state, but could not prevent a person from so transacting business regardless of whether or not he had made himself amenable to its processes. Accordingly, in a case of a nonresident personal defendant jurisdiction could not be acquired by serving an agent.

In *Hess* v. *Pawloski*, 274 U. S. 352, 47 S. Ct. 632, 633, 71 L. Ed. 1091, the Supreme Court in an automobile accident case upheld the validity of a statute of the State of Massachusetts which permitted service of a summons on a nonresident by leaving a copy with the registrar, or his successor in office, provided that notice of such service on the registrar and a copy of the process were forthwith sent to the defendant by registered mail and the defendant's returned receipt and plaintiff's affidavits of compliance with the statute therewith were appended to the writ. Mr. Justice Butler, speaking for the court, made the following statement in regards to the validity of state statutes which per-

mitted local courts to acquire jurisdiction over nonresident operators of motor vehicles:

"* * * In the public interest the state may make and enforce regulations reasonably calculated to promote care on the part of all, residents and nonresidents alike, who use its highways. The measure in question operates to require a nonresident to answer for his conduct in the state where arise causes of action alleged against him, as well as to provide for a claimant a convenient method by which he may sue to enforce his rights. Under the statute the implied consent is limited to proceedings growing out of accidents or collisions on a highway in which the nonresident may be involved. It is required that he shall actually receive and receipt for notice of the service and a copy of the process. And it contemplates such continuances as may be found necessary to give reasonable time and opportunity for defense. It makes no hostile discrimination against nonresidents, but tends to put them on the same footing as residents. Literal and precise equality in respect of this matter is not attainable; it is not required. *Canadian Northern R. Co.* v. *Eggen*, 252 U. S. 553, 561, 562, 40 S. Ct. 402, 64 L. Ed. 713. The state's power to regulate the use of its highways extends to their use by nonresidents as well as by residents. *Hendrick* v. *Maryland*, 235 U. S. 610, 622, 35 S. Ct. 140, 59 L. Ed. 385. And, in advance of the operation of a motor vehicle on its highway by a nonresident, the state may require him to appoint one of its officials as his agent on whom process may be served in proceedings growing out of such use. * * *"

In the case of *Wuchter* v. *Pizzutti*, 276 U. S. 13, page 24, 48 S. Ct. 259, 262, 72 L. Ed. 446, 57 A. L. R. 1230, the court again passed on the constitutionality of a state statute permitting service of summons on nonresident motor vehicle operators. The court in that case held the New Jersey act invalid for the reason that it was defective in not requiring either the secretary of state or the plaintiff to give notice to the nonresident defendant. The majority of the court believed that the statute of New Jersey did not make adequate provisions for communication to the proposed defendant such as would create reasonable probability that he would be made aware of a suit. Mr. Chief Justice Taft, in speaking for the prevailing members of the court, said:

"These cases and others indicate a general trend of authority toward sustaining the validity of service of process, if the statutory

provisions in themselves indicate that there is reasonable probalility that if the statutes are complied with, the defendant will receive actual notice, and that is the principle that we think should apply here."

On April 1, 1935, Mr. Justice McReynolds speaking for the Court in the case of *Henry L. Doherty & Co.* v. *Goodman,* 294 U. S. 623, 55 S. Ct. 553, 9 L. Ed. 1097, upheld the validity of an Iowa statute which permitted summons to be served upon an agent or clerk employed in an office within the state in all actions growing out of or in any way connected with the business of that office. In his opinion, he affirms the judgment of the Iowa Supreme Court, and he quotes with approval the following language taken from the case of *Davidson* v. *Henry L. Doherty & Co.,* 214 Iowa 739, 241 N. W. 700, 91 A. L. R. 1308:

" 'Four things are under this statute essential to the validity of such service. The defendant must: (1) Have an office or agency in the county. (2) A county other than that in which he resides. (3) The action must grow out of or be connected with the business of that office or agency. (4) The agent or clerk upon whom service is made must be employed in such office or agency. * * *

" 'When a nonresident defendent establishes an office or agency for the transaction of business in any county in this state under this statute, he thereby voluntarily appoints his own agent, in charge of said office or agency, as one upon whom substituted service in actions in personam, growing out of that office or agency, may be made. * * *

" ' "Under our statute, the implied consent to be sued in this state is limited to proceedings growing out of the business transacted through the office or agency in this state." It is required that the agent shall actually receive a copy of the notice of suit and that it shall be read to him. * * *

" 'The action must grow out of the business of that very agency. Ample time is given the defendant to appear and defend; there is not only "reasonable probability," but practical moral certainty, that the defendant will receive actual notice of the pendency of the action'." [294 U. S. 623, 55 S. Ct. 554.]

Between the time the United States Supreme Court decided on the *Pennoyer* v. *Neff case,* supra, and its decision in the case of *Henry L. Doherty & Co.* v. *Goodman,* supra,

a number of state courts and some other Federal Courts held statutes similar in substance to the one now under consideration as unconstitutional.

In the case of *Cabanne* v. *Graf*, 87 Minn. 510, 92 N. W. 461, 59 L. R. A. 735, 94 Am. St. 722, the Supreme Court of Minnesota held a similar act invalid. The following statement is found on page 461 of that decision in 92 N. W.:

"Prior to the decision in the case of *Pennoyer* v. *Neff*, 95 U. S. 714, 24 L. Ed. 565, it was the law of this state, and in some other jurisdictions, that, if a nonresident defendant had property in this state, its courts had jurisdiction, without seizing it, to proceed by publication of the summons, and render a judgment in personam, valid within the state to the extent of any property of the defendant therein. *Stone* v. *Myers*, 9 Minn. 303, (Gil. 287) 86 Am. Dec. 104; *Cleland* v. *Tavernier*, 11 Minn. 194, (Gil. 126). Such however, is not now the law, for a statute authorizing such a proceeding would not be due process of law. * * *"

The Superior Court of Delaware in the case of *Caldwell* v. *Armour et al.*, 1 Pennewill 545, 43 A. 517, held a similar statute unconstitutional for the reason that it deprived the defendant of property without due process of law. The act under consideration by that court was broader in scope than the act under consideration in this case for the reason that under the Delaware statute the cause of action need not arise out of the transactions of business in that state.

The Circuit Court for the Western District of Tennessee in the case of *Brooks* v. *Dun et al.*, 51 F. 138, held that the service of summons in that case did not confer jurisdiction over the defendants. This case held that since the *Pennoyer* v. *Neff case*, supra, the decesions of the Cirucit Court of Appeals have been uniformly adverse to the validity of service of summons on nonresident defendants in cases wherein agents have been served.

In the case of *Davidson* v. *Doherty & Co.*, 214 Iowa 739, 241 N. W. 700, 705, 91 A. L. R. 1308, the Iowa Supreme Court upheld the validity of its statute on constructive service on nonresidents. The reasoning in this case was later affirmed by the United States Supreme Court in a

case of *Henry L. Doherty & Co.* v. *Goodman, supra.* The Iowa court in that case considered many of the earlier decisions of the United States Supreme Court and pointed out wherein the majority members of the Court believed the statute under attack was sufficient to meet the test of constitutionality. The Iowa statute required that the defendant have an office or agency in a county; that the office be in a county other than that in which defendant resides; that the action must grow out of the business of that office or agency; and the agent upon whom service is made must be employed by the defendant in the office at the time of service.

Mr. Justice Faville, speaking for the majority of the court, stated the Iowa statute met the test set out by Mr. Justice Taft in the case of *Wuchter* v. *Pizzutti, supra,* and said:

"The statute in question comes squarely within the provisions of this rule. It does not conflict with any provisions of the Federal Constitution. Under the record in this case the court obtained jurisdiction over the appellant in the precise manner pointed out by the statute. The statute does not (1) deny to the defendant any rights or immunities granted to citizens of this state; (2) it does not deny to the defendant the equal protection of the law, because it applies equally to residents and nonresidents; (3) it does not deny to the defendant due process of law, because it provides for a substituted service upon the existing agent of the defendant in charge of the defendant's office or agency, and is limited to matters growing out of that agency, and there is 'every reasonable probability' that such notice so served will necessarily be brought to the attention of the defendant and afford him ample opportunity to defend. Therefore the statute does not contravene any of the provisions of the Federal Constitution."

Restatement of the Law, Conflict of Laws, Section 84, states the rule now to be as follows:

"A state can exercise through its courts jurisdiction over an individual who has done an act within the state, as to a cause of action arising out of such act, if, by the law of the state at the time when the act was done, a person by doing the act subjected himself to the jurisdiction of the state as to such cause of action."

Having roughly traced the trend of authorities away from the strict and narrow holdings of the early cases to the more liberal principle of permitting a nonresident to be sued in a jurisdiction where he has performed certain acts or transacted certain business, providing, the cause of action arose out of the acts or the business transacted, we pass to consider whether or not our act meets the test of constitutionality as set forth by the later holdings of the Supreme Court.

While plaintiff makes such contention, there is no solid foundation for the claim that our act does not give the defendant knowledge of the attempted exercise of jurisdiction. Section 3 of the act requires the party intending to do business in this state to select and desginate his own agent. The nonresident principal knows of the duties of the agent at the time he makes the designation, and he can, accordingly, choose a representative who will make certain the principal's interests are protected and that any process delivered to him, as agent, will be immediately forwarded to the principal. There is no more reason to assume that an agent selected by an individual will be more derelict in his duties than will an agent for a foreign corporation, and no more reason to suppose that the principals in both instances will not be immediately notified. If an agent is legally competent to bind a corporation in the matter of the service of process, and this is conceded by all authorities, we can see no reason why he is not legally competent to bind a personal defendant. If a nonresident complies with the law and designates an agent, the burden is and should be upon him to make such arrangements with the agent for notice as he considers desirable.

Where a statute permits a nonresident to select the process agent, the burden to make the necessary arrangements for notice is one which must be assumed by the nonresident. This duty has been imposed upon a foreign corporation, and we see no good reason why this same principle should not apply against a person. The Supreme Court of the United States in the case of *State of Washington ex rel. Bond &*

*Goodwin & Tucker, Inc.,* v. *Superior Court of State of Washington for Spokane County,* 289 U. S. 361-366, 53 S. Ct. 624, 627, 77 L. Ed. 1256, 89 A. L. R. 653, states:

"\* \* \* It [the statute] goes no further than to require that the corporation may be made to answer just claims asserted against it according to law. By appointing a new agent when Shaw ceased to be a resident of the state the appellant could have assured itself of notice of any action. The statute informed the company that if it elected not to appoint a successor to Shaw the Secretary of State would by law become its agent for the purpose of service. The burden lay upon the appellant to make such arrangement for notice as was thought desirable. There is no denial of due process in the omission to require the corporation's agent to give it such notice."

The act requires service of process to be made on an agent of the nonresident and that the agent at the time of service must be conducting the business for and on behalf of the nonresident, and the action must arise out of the business transacted in the State. If the agent has the capacity to perform as manager, superintendent or agent in supervising the affairs of a nonresident, we can infer he will have the capacity to understand the necessity of notifying the principal in time to permit proper protection of the principal's rights.

The act is not deficient in that it makes no provision for mailing a copy of the summons or notice of the service on the agent to the nonresident. This case differs from those cases which deal with service of summons upon a state officer. In those cases the officer is an agent of the nonresident solely because of designation by statute, and there is a possibility that timely notice will not be given the nonresident. The nonresident has no choice in the selection of the agent and should not be charged with any delict on the part of the state employee. The converse is true, however, where the selection is made by the nonresident. In that situation, the agent is reasonably aware of the whereabouts of his principal and the plaintiff in the action should not be charged with the failure of the agent to carry out one of his assigned duties. The selection and control of the

agent lies with the principal and the latter can direct the agent in the disposition of all papers served upon him. The statute to be constitutional need not require plaintiff to go to unreasonable lengths in seeing that the defendant is notified. To meet the challenge of constitutionality all the act need prescribe is a procedure which will reasonably assure a nonresident that he will not be cast in suit without notice.

Moreover, under the facts of this case, we are not faced with a situation where the nonresident claims he did not receive timely notice. Neither are we confronted with the claim of insufficient time in which to prevent default. No contention is advanced that the twenty or thirty day period in which the defendant must appear was so unreasonably short as to deprive the plaintiff of his property without due opportunity to protect himself.

We can see no real objection to a statute which only forbids nonresidents from doing business in this state until such time as they have consented to the jurisdiction of our courts to rule on causes of action springing into existence within this state and arising out of the business carried on in this state. We are not convinced that such an act does, in fact, deny the nonresidents equal protection of the law or deprive them of property without due process of law. If the cause of action arises in this state, out of business being transacted in this state, the probabilities are that the witnesses will be readily available here; the law of this state will control and determine the cause of action; and the courts here would be the forums of convenience for the trial of the action. To require a resident who is transacting business in this locality to commence his action in a foreign jurisdiction on a cause of action arising here, and transport his witnesses to other states would make protection of his right prohibitive and would, in effect, permit nonresidents to continue in business in this state immune from legal responsibility. To require a nonresident to defend where he commits the alleged wrong is not an unreasonable imposition.

Mr. Austin W. Scott in an article published in 32 Harvard Law Review 871, makes the following observation:

"But there would seem to be no objection to a statute which forbids nonresidents to do busines within the state without having consented to the jurisdiction of the courts of the state as to all causes of action arisng within the state and out of the business carried on within the state. Such a provision seems essentially just. Very clearly provisions allowing creditors to attach the assets employed in the business within the state are desirable and proper, and such provisions are well-nigh universal; but very frequently the business is carried on without the use of any property within the state. In such a case should a creditor of the business be bound to resort to other states to search out and discover the owner of the business? That would seem to be a hardship to the creditor. The words of Mr. Justice Swayne, speaking of the unfairness of refusing a creditor the right to sue a foreign corporation in the state where the corporation was carrying on business and where the cause of action arose, are equally applicable here. 'In many instances the cost of the remedy would have largely exceeded the value of its fruits. In suits local in their character, both at law and in equity, there could be no relief. The result would be, to a large extent, immunity from all legal responsibility.' On the other hand there is little hardship on the owner of the business if he is required to answer for all claims arising out of the business in the place where the business is carried on. A statute requiring persons carrying on business within the state to consent to service of process upon an agent in actions arising within the state, would therefore seem to fall within the proper scope of the police power."

While this is a case of first impression in this court, we have previously passed on the right of our courts to acquire jurisdiction over a foreign corporation which is transacting business in this state, yet has not qualified to do business herein. The reasoning used in those cases holding foreign corporations amenable to processes served on their agents is in part applicable to personal defendants. Mr. Justice McDonough speaking for this court in the case of *Wabash R. Co.* v. *District Court of Salt Lake County et al.*, 109 Utah 526, 167 P. 2d 973, 978, stated the following principle:

"When a resident of the forum suffers a loss, and a foreign corporation which is alleged to be liable therefor, is present in the forum by

solicitation of the kind and character of business out of which the loss arose, it would be an undue burden on the one suffering the loss to be compelled to go into some other state to bring an action when the transaction out of which the loss arose was one solicited in the state where the plaintif resides. To have redress a shipper must have access to the courts. If he must accept the settlement proposed by some claim agent or have to go into some distant state at an expense of perhaps several times the amount of the claim, in many instances the shipper would be denied redress. Where, as here, the plaintiff in the suit is a bona fide resident and domicile of the forum; where the damages claimed allegedly resulted from a delict by carrier or its failure to perform a contract in accordance with the applicable rules of law, in connection with a transaction entered into in this state by the agent of the carrier and the plaintiff; and the carrier's business activities in this state are such as are revealed by the recited facts herein; it is not an undue burden on interstate commerce to require the defendant carrier to here contest such suit."

We believe like reasoning can be applied where a cause of action arises in this state against a personal defendant, and that to require the nonresident to here contest the action is not taking his property without due process of law.

While under the present law our legislature cannot deny a person a right to transact business in this state it can, pursuant to its police power, license and regulate the business carried on. We are convinced under the present day extensions of business into the various states and the rapidity of commuting interstate, that the narrow principles of the early cases must be re-examined in the light of modern conditions, and that this state to properly protect its citizens must have a right to subject nonresidents, who maintain offices and transact business herein, to be subject to the jurisdiction of our courts if an agent upon whom process can be served is still in the employment of the nonresident and if the cause of action arises out of the business transacted here.

This holding is not contrary to the holding of the Supreme Court in *Flexner* v. *Farson, supra,* and is consistent with the holding in the *Henry L. Doherty & Co.* v. *Goodman case,* supra. The *Pennoyer* case is clearly distinguishable from the one here involved. In that case the agent upon whom

process was served was not an agent at the time of service, and the statute did not limit the suit to causes of action arising within the state. Even though it be claimed the *Henry L. Doherty & Co.* v. *Goodman case,* supra, dealt only with the sale of securities to attempt to distinguish the cases on this ground is to overlook the fact that both involve a breach of contract and that both nonresidents were transacting types of business which were subject to supervision and control by the state.

While it is unreasonable to require a nonresident to be answerable when a summons is served on a person no longer his agent, as was attempted in the *Pennoyer* case, it is not unreasonable to require him to be responsible if the status of principal and agent is still in existence, as is the case here. While it may be further unreasonable to require a nonresident to travel to a foreign jurisdiction to defend actions which in no way arise out of the transaction of business in a foreign jurisdiction, as was attempted in other cited cases, it is not unreasonable to require a nonresident to defend his rights when the basis of the suit is the performance of certain acts within the jurisdiction where suit is instituted. By voluntarily doing business in this state, a nonresident impliedly consents to being sued upon cause of action arising out of the transaction of business in this state, and further impliedly consents that service may be made upon the agent in charge of the business office maintained here.

Does the act offend the constitution because it discriminates against nonresidents? Such contention is made, but can only be sustained if the legislature adopted an unfair, unjust or unreasonable classification. It is not necessary that a law apply equally to all persons. It is sufficient if it applies equally to all of one class. Even in cases involving citizens of this state the law does not apply to all alike. The time in which defendants must appear is determined by whether or not they reside in the county in which the action is commenced. A county line makes a difference in time as between citizens of this state,

so a class determining by state lines should not be an arbitrary classification. If a suit is started in the same county in which the defendant resides, then an appearance must be made in twenty days. If the service is made in a county different than the one in which the action is commenced, then a defendant has thirty days in which to appear. This same procedure applies in the case of a nonresident. If the agent is served in the same county in which the action is commenced, then the twenty-day period is applicable. If summons is served on the agent in a county other than the one in which the action is started, then the time is extended to the thirty-day period. A resident of this state may be absent from the state for an extended period of time, and if substituted service is made during his absence at his usual place of abode on someone over the age of fourteen, he is permitted only twenty days in which to appear. Should the suit be started in a county other than where the absent citizen resides, then he has the extended period to appear. These situations seem to be consistent with those arising out of serving an agent of a nonresident. The principal difference being that in the case of a resident, the location of his principal place of abode and the place where suit is started control the time element, while in the case of a nonresident, the location of the place of business and the place where suit is started control. The fact that a resident is more apt to be present in the state and obtain personal notice of the suit perhaps a day or two earlier than the nonresident, does not render the act void. The statute makes no hostile discrimination against nonresidents, but insofar as practical, puts them on the same footing as residents. Under present day methods of communication distance is not of great importance and the time element permitted by our statute is sufficient to allow nonresidents ample time to make arrangements to properly defend their rights, and our procedure permits the necessary extensions of time, if a showing is made that additional time is necessary.

Plaintiff lastly contends that even if it be held the act is constitutional, it is being unconstitutionally applied as

against him, for the reason that the act did not take effect until after he had entered into the contract with the defendant. There might be force in this contention ■ if it clearly appeared that the right of action had arisen before the effective date of the act and plaintiff had ceased his operations in this state. However, the record establishes that when the contract was entered into, the act had been passed by the legislature and signed by the governor even though the effective date was delayed. While plaintiff may have entered into his contract between the passage of the act and its effective date, he continued to transact business in this state after the act took effect. The alleged breach of contract took place some three weeks after the act went into effect, summons was served on the agent of the plaintiff on the 11th day of August, 1947, and at this time the business was still being operated in this state without an agent having been designated. This was some three months after the act went into effect.

Plaintiff was required to designate an agent on the effective date of the act, and his failure to comply with the law cannot be used as a reason for defeating defendant's right to claim the benefit of the statute. Not having designated an agent, plaintiff cannot be heard to ■ complain, if the agent served is one designated by statute. Even though plaintiff, at the time he entered into the contract with the defendant, did not impliedly consent to be sued in the courts of this state, by continuing to operate his business after the act became effective he impliedly consented to being served in the manner provided by the act for or on account of any cause, arising out of his operations in this state.

The trial court correctly ruled it had jurisdiction to proceed and the motion to quash was rightly denied. The alternative writ of prohibition heretofore issued is recalled. Defendants to recover the cost.

McDONOUGH, C. J., and WADE and WOLFE, JJ., concur.

PRATT, Justice (dissenting).

I certainly am not averse to the idea that a non-resident principal should respond to the jurisdiction of this state in causes arising out of the business he may be conducting in this state. Undoubtedly there is an injustice in compelling the plaintiff to follow such a principal to the latter's home state to recover. There is another side to the picture, however. What about the non-resident who, though he is charged with doing business in this state, is, as a matter of fact not so doing; but, for lack of notice, suffers a default judgment and has to come to this state to have it set aside —and this, maybe, years after its entry due to his lack of knoweldge of its existence?

Let us analyze this side of the picture for a moment. There are two important matters for consideration in process serving as contemplated by the code sections in question. One is that of notice to the defendant; the other the matter of agency. Of course all such process serving is founded upon the basic idea of affording the opposing party an opportunity to defend himself by giving him notice of what is to take place. This notice is considered of such importance, that even the most vicious of criminals is entitled to it before action may be taken against him. The process serving sections of our code set up foundations for service which, from our experience with human nature convince us are situations very likely to afford the opponent the notice. For instance: A summons left at his home. People go home daily, not to mention the interest a member of his family may have in seeing that he gets notice, or the interest his servant may have in passing it on to him. Notice particularly in that section of our code (104-5-11, par. 8) that the person with whom the summons is left must be 14 years of age. Why any minimum age? Simply because we are fearful that a person of lesser age may not have sufficient mental maturity to recognize the importance of handing any paper to the member of the household intended to be served—we are fearful that the latter will not get the notice we considered so important.

This is a good point at which to refer to the present case. The prevailing opinion in effect holds that if an alleged non-resident principal does not designate an agent, any agent of his may be served. But who determines this latter agency? The adverse party—the plaintiff—the one least interested in seeing that the non-resident actually gets notice —the one who is bound to construe the facts in favor of "doing business" in the state in order to make the service good. What does this adverse party do? He has a person served whom he calls an agent; and that person, being indifferent in the matter is not going to forward the process to the non-resident. Thus the prevailing opinion approves a foundation for service of process all elements of which are adverse to the likelihood of the alleged principal getting notice. It is said: Well, the non-resident principal may avoid this difficulty by designating an agent. This assumes a "doing business" in this state; and furthermore treats the service of process upon *any agent* as a penalty for failure to designate. The application of the penalty is left to the hands of an adverse party who, to say the least, is not going to be impartial in the matter. If the non-resident is to be penalized for a failure to designate an agent it should be after notice to him (that he may deny doing business, if that be the fact), not action that will jeopardize the likelihood of his getting notice. Notice to him; above all things; is important in due process. The penalty for non-designation should not be any loss of right to notice of process. If we are fearful that a child less than 14 years of age will not deliver notice left at the home (104-5-11), we should be doubly fearful of a party whose interests are adverse to the person to be served.

When a non-resident principal designates an agent, naturally he is going to make certain that his agent will forward the process. Under such circumstances the likelihood of notice is very strong, and the matter of agency is established of record. If, as in the motor vehicle laws (Section 12, Chapter 68, Laws of Utah 1943) of this state and others, a state official is made the process agent, the likeli-

hood of notice to the non-resident is assured by the necessity of mailing notice to him, which is a duty imposed by the statute upon the official. *Wuchter* v. *Pizzutti*, 276 U. S. 13, 48 S. Ct. 259, 72 L. Ed. 446, 57 A. L. R. 1230, in which a New Jersey non-resident motorist statute was held to be bad because there was no provision for notice; *Hess* v. *Pawloski*, 274 U. S. 352, 47 S. Ct. 632, 71 L. Ed. 1091, recognizing that there must be actual notice to the non-resident; and *Henry L. Doherty & Co.* v. *Goodman*, 294 U. S. 623, 55 S. Ct. 553, 79 L. Ed. 1097, reasserting this principle. Incidentally, matters pertaining to automobiles, and matters pertaining to corporations are so bound up in state recordings that it is not hard to be certain of process on the right parties. That is not true of the individuals.

Before concluding this part of my opinion may I say this: We must recognize, of course, that be a statute ever so ingeniously worded there are always those who will and can abuse it. I am not arguing that point. My attack is centered upon the effect of the statute itself in that its tendency is to do away with notice, rather than require it.

Now as to the law upon these motor vehicle cases and cases similar thereto:

In the case of *Henry L. Doherty & Co.* v. *Goodman,* supra, the court expressly recognizes that one of the factors in deciding that case was the nature of the business which was being transacted. The case involved the sale of securities. A part of the opinion is quoted below:

"Iowa treats the business of dealing in corporate securities as exceptional, and subjects it to special regulation. The * * * act requires registration and written consent for service of process upon the secretary of state. * * * *Considering this fact, and accepting the construction given to Sec. 11079,* we think to apply it as here proposed will not deprive him of any right guaranteed by the Federal Constitution. (Italics added.)

* * * * *

"Moreover, under the laws of Iowa neither her citizens nor nonresidents could freely engage in the business of selling securities."

The case then goes on to discuss the "non-resident motorist statutes" which have been upheld by the United States

Supreme Court, as allowing the State by Statute to require actual appointment of a State Officer as agent to receive process, or else allow this result by statutes providing that use of highways shall be deemed agency for service of such process upon a state official designated in behalf of the non-resident motorist.

The case then concludes with this language:

"So far as it affects appellant, the questioned Statute goes no further than the principle approved by those opinions permits [referring to the principle enunciated in the 'non-resident motorist vehicle cases' holding that the nature of the automobile and society is such that it is a reasonable classification for regulation]. Only rights claimed upon the present record are determined. *The limitations of section 11079 under different circumstances we do not consider.*" (Italics added.)

Looking then to the "non-resident motorist" statutes we find that the validity of these statutes is based upon the fact that the act of the motorist involves danger to life and property and for this reason the state has power to forbid the non-resident access unless he first consents to exercise of jurisdiction over him by the courts of the state as to causes arising out of those acts. The Supreme Court of the United states has held that such a category is one which the states may constitutionally regulate, so long as *provision is reasonably made for actual notice to the non-resident* and a reasonable time is given for him to come in and defend. *Wuchter* v. *Pizzuti,* supra; *Hess* v. *Pawloski,* supra; *Henry L. Doherty & Co.* v. *Goodman,* supra. (Note the importance of notice.) A state may forbid a non-resident motorist the use of the highways unless such motorist first consents to jurisdiction of the courts of that state over him. The following quotation is found in the case of *Hess* v. *Pawloski,* supra, which case is cited in the *Doherty* case as one of those enunciating the principle beyond which the *Doherty* case does not purport to go:

"Motor vehicles are, dangerous machines, and even when skillfully and carefully operated, their use is attended by serious dangers to persons and property. * * * " [Then follows the balance of the

quotation which is set out in the majority opinion in which it is also recognized that actual notice must be provided for.]

Observe that the principle thus enunciated has its basis in the fact that motor vehicles are dangerous, and thus a category subject to special regulation under the *police power*. In this connection see also *Kane* v. *State of New Jersey*, 242 U. S. 160, 37 S. Ct. 30, 61 L. Ed. 222. When the *Henry L. Doherty & Co.* v. *Goodman* case approves the principle thus set out by the *Hess* case and applies it to the facts then before the court, they do so on the theory that the sale of securities is the subject of regulation under the *police powers*. That the court in the *Doherty* case was not abrogating the rule of *Flexner* v. *Farson*, 248 U. S. 289, 39 S. Ct. 97, 63 L. Ed. 250, is further evidenced by the following quotation from *Hess* v. *Pawloski*, which case as indicated by the quoted part of the *Doherty* case above formed the basis for the principle there enunciated:

"* * * *The mere transaction of business in a state by non-resident natural persons does not imply consent to be bound by the process of its courts. Flexner* v. *Farson,* 248 U. S. 289, 39 S. Ct. 97, 63 L. Ed. 250. The power of a state to exclude foreign corporations, although not absolute, but qualified, is on the ground on which such an implication is supported as to them. *Pennsylvania Fire Ins. Co.* v. *Gold Issue Mining Co.,* 243 U. S. 93, 96, 37 S. Ct. 344, 61 L. Ed. 610. *But a state may not withhold from nonresident individuals the right of doing business therein.* The privileges and immunities clause of the Constitution, (sec. 2, Art. IV), safeguards to the citizens of one state the right to 'pass through, or reside in any other state for purposes of trade, agriculture, professional pursuits, or otherwise.' And it prohibits state legislation discriminating against citizens of other states. [Citations]" (Italics added.)

This quotation in its position in the case immediately precedes that quoted in the majority opinion.

In short, the Supreme Court of the United States has determined that a non-resident motorist is a category which may be regulated under the police powers. This is an entirely different thing from a non-resident coming into the state, merely to transact business. The "non-resident motorist

statutes" then represent an inroad in the general rule as announced in the case of *Flexner* v. *Farson,* supra, and not an abrogation of that rule in any sense. Having established that non-resident motorists are a category which should be subject to special police power regulation, then it no longer comes within the rule of *Flexner* v. *Farson,* supra, as a category the regulation of which violates the privileges and immunities of U. S. Citizens, provided that it is surrounded with the safeguards which we have indicated relative to actual notice and time to appear and defend.

Since the *Doherty* case and the *Hess* v. *Pawloski* case (together with others involving validity of the "non-resident motorist statutes") both go off on the ground that they are categories entitled to separate and special protection, they have little value as authority in determining the present question, which is: "Can a state impose a requirement such as here attempted involving *all business* carried on by non-residents within that State?"